439 So.2d 1260 (1983)
Robert WACHTER
v.
Angela WACHTER.
No. 83-CA-265.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1983.
*1261 Leonard K. Fisher, Jr., Boutte, for appellant.
Randy O. Lewis, Luling, for appellee.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CHEHARDY, Judge.
In this dispute over child custody, the mother appeals from a judgment awarding temporary custody to the father. At issue are the enforcement of a prior New Jersey judgment awarding custody to the mother, and the jurisdiction of the Louisiana court to decide custody, under the Uniform Child Custody Jurisdiction Act. We affirm the district court's judgment in part, and set it aside in part.
The following facts are relevant to the jurisdictional issues. Robert and Angela Wachter had lived in New Jersey with their two minor children, Robert Shawn and Lorelei, since January 1981. In June 1982, Robert was hired to work at the Waterford III Nuclear Plant in St. Charles Parish, Louisiana. On July 3, 1982 Angela informed Robert that she had received a job offer to work at the Oyster Creek Nuclear Generating Station in New Jersey (where Robert was then working) and that she would not move to Louisiana with him. The children were in Idaho during the month of July, visiting their maternal grandparents.
Robert moved to Louisiana in early July to start his new job. On August 4 the children returned to New Jersey from Idaho. On August 10 Robert came back to New Jersey, unknown to Angela. His wife and children were staying with friends of hers. While Angela was temporarily out of the house, Robert took the children, telling Angela's friends he was just taking them to get ice cream. The next day Angela received a telephone call from a friend of Robert's, who told her Robert had taken the children back to Louisiana with him.
*1262 On August 19, 1982, Angela Wachter filed a complaint against Robert in the Superior Court of Ocean County, New Jersey, seeking a divorce and custody of the children. On the same date, the New Jersey court issued an ex parte order vesting temporary custody of the children in Angela, ordering Robert to return the children to their mother within 10 days, and setting a hearing on these matters for September 3, 1982. (In discussing these, and all subsequent pleadings, we omit mention of the allegations relating to the parties' demands for divorce and/or separation, because the only issue before us is the custody of the children.)
As far as can be determined from the record, the hearing set for September 3 did not take place until September 13, 1982. Robert Wachter was neither present nor represented by counsel. The New Jersey court issued an order directing Robert to return the children to Angela by September 13, continuing temporary custody of the children with Angela, and restraining the parties from removing the children again from New Jersey if they were returned to that state. On September 8, Angela's New Jersey attorney had sent a letter to Robert by certified mail to inform him the judge would be signing the order that would demand the return of the children by September 13. The record does not reflect whether Robert received the letter.
On September 17, 1982 the New Jersey court issued an order for a bench warrant and for removal of the children from Louisiana to New Jersey, directing the Sheriff of St. Charles Parish to arrest Robert Wachter and to extradite him to New Jersey for his failure to obey the court's September 13 order. Angela was thereby authorized to remove the children from Robert's domicile to relocate them to New Jersey.
Meanwhile, Robert Wachter had filed his own petition for separation in the 29th Judicial District Court for St. Charles Parish, Louisiana, on September 3, 1982. In that petition he prayed for pendente lite custody of the children and permanent custody thereafter. He also asked for an ex parte order for temporary custody, on the ground that Angela might attempt to remove the children from the jurisdiction. By ex parte order, the court appointed an attorney to represent Angela, granted temporary custody to Robert, and set a hearing on the custody issue for October 13, 1982.
On October 8, 1982, Angela's court-appointed attorney filed a combination exception/motion to recognize foreign judgment. In that pleading Angela alleged the Louisiana court was without authority to grant ex parte temporary custody to Robert because Louisiana law does not provide for such action without a hearing; she pleaded lis pendens and res judicata, on the ground the New Jersey court had jurisdiction over all matters relating to the marriage, and custody of the children had already been awarded to Angela; finally, Angela moved to have the New Jersey court orders recognized and made executory in Louisiana. The hearing on this motion was set for the same date as the hearing on Robert's custody rule.
That hearing was held as set on October 13, 1982. Both Robert and Angela were present and represented by counsel. After hearing testimony from both parties, the trial judge rendered judgment in favor of Robert. The judge ruled that the New Jersey judgment was not entitled to recognition in Louisiana because the New Jersey court did not "follow substantive rules providing for service of process and legal delays within which to respond to any petition for custody." Further, the judge held, the New Jersey court did not have jurisdiction over the children at the time Angela Wachter brought suit, because the children had already arrived in Louisiana and were "residing under the roof of their natural father," so that they were domiciled within the 29th Judicial District Court's jurisdiction "under the provisions of R.S. 13:1570, thus this court became responsible for awarding custody after a contradictory hearing." Accordingly, by judgment dated October 14, 1982, the judge awarded custody *1263 to Robert and set visitation rights for Angela.
Angela Wachter has appealed. She contends on appeal that the trial judge erred in failing to recognize the decree of the New Jersey court; in the alternative, that the trial judge erred in finding it was in the best interest of the children to be placed in Robert's custody.

ENFORCEABILITY OF NEW JERSEY JUDGMENT
Although the result reached by the trial judge on the question of the New Jersey judgment may have been correct, it is clear he did not follow the appropriate law in reaching it. To determine whether he erred, therefore, we must review the New Jersey judgment independently.
Counsel for both parties cited the Uniform Child Custody Jurisdiction Act in support of their positions. In fact, there are two statutory schemes the trial judge should have considered in determining whether to recognize the New Jersey judgment.
The first is Title 28 U.S.C. Sec. 1738A, also known as the Parental Kidnapping Prevention Act of 1980 (PKPA). It mandates that every state shall give full faith and credit to child custody determinations made by courts of another state, provided such determinations are made consistently with the provisions of the PKPA.
Paragraph (e) of the PKPA requires,
"Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child."
In addition, paragraph (g) states,
"A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."
Paragraph (c) provides,
"A child custody determination made by a court of a State is consistent with the provisions of this section only if
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

*1264 (E) the court has continuing jurisdiction pursuant to subsection (d) of this section." (Emphasis added.)
Paragraph (b)(4) of the PKPA defines "home State" as,
"* * * the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months * * *. Periods of temporary absence of any of such persons are counted as part of the six-month or other period."
The second statutory scheme we must consider is the Uniform Child Custody Jurisdiction Act (hereinafter UCCJA), adopted by Louisiana in 1978 (LSA-R.S. 13:1700 to 13:1724) and by New Jersey in 1979 (NJSA 2A:34-28 to 2A:34-52). See 9 Uniform Laws Annotated, Master Edition. (We take judicial notice of New Jersey's laws, as required by LSA-C.C.P. art. 1391.)
Section 13 of the UCCJA (adopted in Louisiana as LSA-R.S. 13:1712 and in New Jersey as NJSA 2A:34-41) provides the court of each state shall recognize and enforce an out-of-state decree when the court of the other state assumed jurisdiction under statutory provisions substantially in accordance with the Act, or when the decree was made under factual circumstances meeting the jurisdictional standards of the Act.
Section 5 of the UCCJA (LSA-R.S. 13:1704 in Louisiana, NJSA 2A:34-33 in New Jersey) provides for various methods of giving notice to persons outside the state. Paragraph (b) states that notice under this section shall be served, mailed or delivered at least 10 or 20 days before any hearing in the state. As adopted in Louisiana, the Act requires a minimum of 10 days notice; as adopted in New Jersey, however, it requires at least 20 days' notice. This time period may be shortened by the court if the matter is "emergent."
Section 6 of the UCCJA (LSA-R.S. 13:1705 in Louisiana, NJSA 2A:34-34 in New Jersey) states, in pertinent part:
"(a) A court of this State shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons."
The other paragraphs of that section provide further that before hearing a custody petition, the court shall make efforts to determine whether a custody proceeding is pending in another state. If such a proceeding is pending the court shall stay its proceeding and communicate with the court in which the other proceeding is pending to determine which is the more appropriate forum.
Applying both the PKPA and the UCCJA to the case before us, we conclude the trial court was correct in refusing to recognize and enforce the New Jersey judgment placing custody in Angela. As did the trial judge, we find the New Jersey court failed to follow the legal requirements for notice in hearing the custody proceeding. Specifically, the petition and order setting the custody hearing for September 3, 1982 were not served on Robert Wachter until August 30, 1982. Although the hearing did not actually take place until September 13, this still does not satisfy the requirements of the New Jersey version of the UCCJA, NJSA 2A:34-33, because the New Jersey statute requires at least 20 days' notice before any hearing. Since the timing of the hearing did not comply with the law, clearly the New Jersey court's jurisdiction over Robert Wachter was not substantially in accordance with the Act at the time the judgment was rendered and so that decree was not enforceable in Louisiana.

JURISDICTION OF LOUISIANA COURT
On the other hand, we find the district court erred in finding it had jurisdiction to decide custody on its own.
Both the PKPA and the UCCJA forbid a court to exercise jurisdiction in a custody proceeding where there is a custody proceeding *1265 already pending in another state which is exercising jurisdiction according to the provisions of the respective Acts.
28 U.S.C. Sec. 1738A(c), set forth above, describes the circumstances under which a child custody determination is consistent with the provisions of the PKPA. Under paragraph (c)(2)(A)(ii), it is evident that only New Jersey would have jurisdiction in this case, because New Jersey was the home state of the Wachter children at the time the New Jersey proceeding was filed. Under the PKPA, Louisiana could not have jurisdiction at the same time as New Jersey unless the children had been abandoned or needed emergency protection from abuse. Since neither of these emergency situations applied to the Wachter children, only New Jersey had jurisdiction under the PKPA.
It can be argued that Louisiana had simultaneous jurisdiction with New Jersey under the "significant connection" definition of the UCCJA. See Revere v. Revere, 389 So.2d 1277 (La.1980); LSA-R.S. 13:1702(A)(1) and (A)(2). Nonetheless, under the "Simultaneous Proceedings" portion of the UCCJA (enacted as LSA-R.S. 13:1705 in Louisiana, and discussed earlier in this opinion), it is plain that the Louisiana court should have deferred to the New Jersey court's jurisdiction, or at least have consulted with the New Jersey court to determine the more appropriate forum, because the New Jersey proceeding was pending when the petition was filed.
"It is evident that jurisdiction may exist in two different states under the home state and significant connection standards. When this occurs, it is not necessary that the significant connection state defer in every case to the home state. The conflict is avoided by reference to priority of filing (see R.S. 13:1705, which requires a court with jurisdiction under the uniform law to defer to the court of another state with uniform law jurisdiction when the first proceeding was filed in the latter state) and to factors indicating Louisiana is an inconvenient forum (see R.S. 13:1706, which encourages judicial restraint when another state with jurisdiction under the uniform law appears to be in a better position to determine custody)." (Footnotes omitted.) Revere v. Revere, 389 So.2d at 1280.
The Louisiana district court's determination that jurisdiction vested in it under LSA-R.S. 13:1570 was incorrect. That statute describes the jurisdiction of the district court when acting in its capacity as a juvenile court, and is applicable only to children in need of care or supervision or who are delinquent. It cannot be used simply to change custody from one parent to another. State in Interest of Thompson, 372 So.2d 1255 (La.App. 3d Cir.1979); C.J.P. art. 15.
Further, the UCCJA states that physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody. LSA-R.S. 13:1702(C); NJSA 2A:34-31(c). Accordingly, the district court erred in stating New Jersey had no jurisdiction because the children were in Louisiana with their father when the New Jersey petition was filed.
We conclude that under the standards prescribed by the Parental Kidnapping Prevention Act of 1980, 28 U.S.C. Sec. 1738A, jurisdiction to determine the custody of the Wachter children vested exclusively in the Superior Court for Ocean County, New Jersey. Although the jurisdiction under the Uniform Child Custody Jurisdiction Act is broader, and might be construed to bestow simultaneous jurisdiction on Louisiana in this case, we conclude the federal act pre-empts state law under U.S. Const. Art. IV, Sec. 1, as concerning full faith and credit among states. That article provides:
"Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."
Our conclusion herein is pursuant to the expressed purposes of not only the federal law but also the UCCJA, especially that of avoiding jurisdictional competition and conflict *1266 between state courts in matters of child custody. Sec. 7, Pub.L. 96-611; LSA-R.S. 13:1700; NJSA 2A:34-29. See also, Dillon v. Medellin, 409 So.2d 570 (La.1982); Revere v. Revere, supra.
Accordingly, the judgment of the district court is affirmed insofar as it refused to enforce the September 13, 1982 judgment of the New Jersey court, but set aside insofar as it purported to exercise its own jurisdiction to determine custody. The case is remanded and the district court is ordered to stay further custody proceedings and to communicate with the New Jersey court to determine which is the more appropriate forum, pursuant to LSA-R.S. 13:1705. Each party is to pay his or her own costs for this appeal.
AFFIRMED IN PART; SET ASIDE IN PART; AND REMANDED.