0148

Jeanne S. MARKS, Appellant, v. Richard L. MARKS and Timothy Lee Marks, an infant, Respondents.

(315 S. E. (2d) 158)

Court of Appeals

*John R. Clarke,* North Myrtle Beach, *for appellant.*

*J. M. Long, Jr.,* Myrtle Beach, *Larry B. Hyman, Jr.,* Conway, *for respondents.*

Heard Dec. 6, 1983.

Decided April 13, 1984.

BELL, Judge:

This is a "child snatching" case involving conflicting custody decrees of the courts of South Carolina and West Virginia. Because the child was removed from West Virginia to this State in willful violation of a valid custody decree of the West Virginia court, we reverse the judgment of the family court changing custody of the child from the mother to the father.

The appellant, Jeanne S. Marks, and the respondent, Richard L. Marks, were married in 1967 in West Virginia. In 1970 their only child, the respondent Timothy Lee Marks, was born in that state. Timothy was raised in West Virginia, where the parties lived continuously until July, 1980.

As a result of marital problems, the father left the marital home in August, 1979. Under a separation agreement dated August 31, 1979, the mother was given custody of Timothy. The agreement also required both parties to vacate the marital home so it could be sold. Pursuant to the agreement the mother moved to a smaller house in a different neighborhood. The move required Timothy to change schools. There was evidence that Timothy suffered personal adjustment difficulties because of the breakdown of his parents' marriage and the changes it brought to his life.

Timothy lived with his mother during the 1979-80 school year. He saw his father for weekend visitation as provided in the separation agreement and at additional times with the consent of the mother. The mother never interfered with the father's visitation rights.

In June, 1980, problems arose when the father refused to return Timothy to his mother after a weekend visitation. The mother instituted an action in the Circuit Court of Harrison County, West Virginia, to enforce her right of custody. The court held a hearing at which the father was represented by counsel. The father presented evidence concerning the mother's fitness as custodial parent, Timothy's desire to live with him rather than the mother, and alleged physical and psychological abuse she had inflicted on the child. The court issued its order on July 14, 1980, granting custody to the mother and continuing the father's right of visitation. The father took no appeal from the decision.

The record reveals that immediately after the custody decree was issued, the father began planning to remove Timothy from West Virginia to Myrtle Beach, South Carolina. He consulted with an attorney in Myrtle Beach about bringing Timothy to South Carolina. He made advanced reservations for himself, his girlfriend, Pat McReynolds, and Timothy at a motel in Myrtle Beach. Three or four days before his father's first weekend visitation under the court order, McReynolds went ahead to Myrtle Beach. During his first visitation the father discussed going to Myrtle Beach with Timothy. The boy agreed with the father's plan and the two of them fled West Virginia that weekend. They and McReynolds lived in Myrtle Beach for the next five months without informing the mother where they were.

When the mother discovered the whereabouts of the father and Timothy, she commenced this action seeking enforcement of the West Virginia custody decree. In answer to her petition, the father alleged the mother had serious personal adjustment difficulties, was hyper-religious, vented her hostility to the father in psychological and physical abuse of Timothy, and had engendered an emotional and behavioral disorder in the child which manifested itself in acutely impaired learning ability in school. He further alleged that after the custody decree had been entered in West Virginia Timothy was greatly disturbed when returned to his mother's custody, that he ran away from her home, and that the mother had physically abused Timothy. On these grounds the father counterclaimed for permanent custody of Timothy.[1]

After hearing testimony, the family court entered an order awarding custody to the father on the basis of changed circumstances. The court found no evidence of physical mistreatment of the child by the mother prior to the hearing in West Virginia on July 9, 1980. However, the court did find that the mother "sat upon" the child the day he was returned to her custody pursuant to the West Virginia court order. In the court's opinion, this incident and evidence that Timothy was happy in Myrtle Beach established a change of circumstances justifying a change of custody to the father.

---

[1] The father also counterclaimed for divorce on the ground of one year's continuous separation.

During the pendency of this appeal, the wife was granted a divorce in West Virginia. The father was represented by counsel and took part in the divorce proceeding. After an evidentiary hearing, the Circuit Court of Harrison County issued a decree of divorce, which among other things, awarded the mother permanent custody of Timothy. The court made a specific finding that the mother was a fit and proper person to have custody of the child. The father did not appeal.

By consent of the parties the divorce decree was made a part of the record in this appeal and the mother was permitted to file an additional exception based on the federal Parental Kidnapping Prevention Act of 1980.

### I.

As a threshold matter, we must determine what law should constitute the rule of decision in this case. In oral argument the mother relied on the principles of the state Uniform Child Custody Jurisdiction Act,[2] the federal Parental Kidnapping Prevention Act of 1980,[3] and prestatutory case law to support her position.

This action was commenced on January 8, 1981, some six months before the effective date of the Uniform Child Custody Jurisdiction Act in this State. However, the federal Parental Kidnapping Prevention Act of 1980 (Federal Act) had become law prior to commencement of this suit.[4] Since the pre-existing case law and the Federal Act provide an adequate basis for disposition, we do not decide whether the public policy embodied in the Uniform Child Custody Jurisdiction Act should also be applied. *But see Roehl v. O'Keefe*, 243 Ga. 696, 256 S. E. (2d) 375 (1979); *Inn v. Inn*, 93 Misc. (2d) 1110, 404 N. Y. S. (2d) 511 (Fam. Ct. 1978).

### II.

Since the Federal Act had become law prior to commencement of this suit, it preempts any state law that may have existed at that time. *Tufares v. Wright*, 98

---

[2] Section 20-7-782 *et seq.*, Code of Laws of South Carolina, 1976, as amended.
[3] 28 U.S.C. § 1738A (1980).
[4] The Federal Act became effective on December 28, 1980. *State ex rel. Valles v. Brown*, 97 N. M. 327, 639 P. (2d) 1181 (1981); *Salisbury v. Salisbury*, Tenn. App., 657 S. W. (2d) 761 (1983).

N. M. 8, 644 P. (2d) 522 (1982); *E.E.B. v. D.A.*, 89 N. J. 595, 446 A. (2d) 871 (1982), *cert. denied,* ____ U.S. ____, 103 S. Ct. 1203, 75 L. Ed. (2d) 445 (1983); *Flannery v. Stephenson,* 416 So. (2d) 1034 (Ala. Civ. App. 1982); *Blazek v. Blazek,* 119 Misc. (2d) 141, 462 N. Y. S. (2d) 557 (Fam. Ct. 1983). For the reasons which follow, we hold that the Federal Act prevented the family court from modifying the July 14, 1980, West Virginia custody decree.

■  Section 1738A(a) of the Federal Act provides:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify . . . any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a). A determination is consistent with the Federal Act if the court making the child custody determination has jurisdiction under the laws of that state and that state is the home state of the child on the date of the commencement of the proceeding. 28 U.S.C. § 1738A(c)(1) and (c)(2)(A)(i). West Virginia was indisputably the home state of Timothy Marks in June 1980 when the mother instituted the proceedings that led to the July 1980 custody order. Counsel for the father concedes the Circuit Court of Harrison County had jurisdiction of that proceeding under the laws of West Virginia.

Accordingly, the family court was prevented from modifying the West Virginia decree unless subsection (f) of the Federal Act applied. 28 U.S.C. § 1738A(a).

Subsection (f) states:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
> (1) it has jurisdiction to make such a child custody determination; and
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

The Federal Act further provides that jurisdiction of a state continues as long as the state has jurisdiction under its own

laws and the state remains the residence of the child or any contestant. 28 U.S.C. § 1738A(d) and (c)(1).

Under the laws of West Virginia that state retained jurisdiction over the custody of Timothy Marks after he was removed to South Carolina in July 1980. *See Acord v. Acord,* 264 S. E. (2d) 848 (W. Va. 1980); *see also Smollar v. Smollar,* 276 S. C. 528, 280 S. E. (2d) 543 (1981). Its jurisdiction continued in January 1981 when this action was brought in family court. Indeed, West Virginia subsequently exercised its jurisdiction, for the February 10, 1982, divorce and custody decree states:

> This Court has continuing jurisdiction of both of the parties and subject matters involved in this civil action and has had such jurisdiction since the institution of this civil action in June of 1980...

Furthermore, the mother has continued to reside in West Virginia and was a resident in January 1981. Since the mother, a contestant in this action, was a resident of West Virginia and West Virginia had jurisdiction under its own laws, West Virginia continued to have jurisdiction under the Federal Act.

Because this action does not fall within the provisions of subsection (f), it is governed by the general rule of subsection (a) of the Federal Act. We thus hold that the family court was bound to enforce and was prohibited from modifying the 1980 West Virginia custody decree. *See Belosky v. Belosky,* 97 N. M. 365, 640 P. (2d) 471 (1982); *State ex rel. Valles v. Brown,* 97 N. M. 327, 639 P. (2d) 1181 (1981); *Mitchell v. Mitchell,* 437 So. (2d) 122 (Ala. Civ. App. 1982).

### III.

Common law principles also compel the conclusion that the family court abused its discretion by modifying the 1980 West Virginia decree.

Courts have long refused to exercise jurisdiction over child custody disputes where a party seeking custody attempts by his own wrongful act to wrest from a sister state a jurisdiction properly appertaining to it. *See Taylor v. Jeter,* 33 Ga. 195 (1862); *Shippen v. Bailey,* 303 Ky. 10, 196, S. W. (2d) 425 (1946); *State v. Black,* 239 Ala. 644, 196 So. 713 (1940); *State ex rel. Glasier v. Glasier,* 272 Minn. 62, 137 N. W.

(2d) 549 (1965); *In re Marriage of Saucido,* 85 Wash. (2d) 653, 538 P. (2d) 1219 (1975). Similarly, where a change of custody is sought on the basis of changed circumstances, the changed circumstances required by the law cannot flow from the acts of a person who has improperly or in violation of a valid custody decree of a sister state removed the child to another jurisdiction. *Ex parte Bauman,* 82 Cal. App. (2d) 359, 186 P. (2d) 154 (1947).

Timothy was removed to this State in willful violation of the West Virginia order with the intent to deprive the mother of her lawful custody. The father does not seriously contest this point. Whatever sympathy we may have for the father's claim that Timothy would be better off with him, he had no right to take the law into his own hands. Nothing prevented him from applying to the West Virginia Court for a change of custody based on a change in circum-stances. Faced with a situation in which the child had been brought to South Carolina in defiance of a custody decree of a court of competent jurisdiction in a sister state, the family court, under common law principles governing the discretionary exercise of jurisdiction, should have refused to consider the father's counterclaim for custody.

In oral argument, both the father's attorney and Timothy's guardian ad litem argued that the overriding best interest of the child outweighs any improper conduct by the father which might otherwise justify the family court in refusing to modify custody. They ask us to take notice of the provision of the Uniform Child Custody Jurisdiction Act permitting the court to change custody in the interest of the child even if the petitioner has improperly removed the child from the physical custody of the parent entitled to custody. *See* § 20-7-798(b), Code of Laws of South Carolina, 1976, as amended. We are not persuaded by the argument on the facts of this case.

Absent an emergency situation relating to the welfare of the child and requiring its intervention, the family court should not have exercised jurisdiction. *See Lee v. Layton,* 51 Ala. App. 298, 285 So. (2d) 108 (1973), *cert. denied,* 291 Ala. 787, 285 So. (2d) 113 (1973). The evidence does not support a finding that an emergency situation relating to the welfare of the child had arisen either in July, 1980, when the father ab-

sconded with the child, or in January, 1981, when this matter was brought before the South Carolina court. Timothy may well have been unhappy with his mother in West Virginia, but there is little to suggest he was in serious danger of immediate harm if he remained with her. Since he passed the previous school year in her care and custody without apparent incident, it is difficult to tell how much his unhappiness during the summer vacation may have resulted from the persuasion and influence of the father. If, in July, 1980, there were genuine emergency circumstances justifying a change of custody, the father had every opportunity to seek relief in West Virginia. In view of the circumstances presented, it was an abuse of discretion for the family court to reward the father's wrongful conduct by modifying the West Virginia decree.

## IV.

The mother's final argument relates to the award of costs, disbursements, and attorney's fees. Without making findings of fact to support its decision, the family court awarded the mother $500.00 in attorney's fees.

Although the award of suit money is addressed to the sound discretion of the family court judge and will not be disturbed on appeal absent a showing of abuse of discretion, we agree with the mother that the factors existing in this case demonstrate that an award of $500.00 as attorney's fees is so inadequate as to warrant reversal. The trial judge made none of the findings required by the cases. *See Nienow v. Nienow*, 268 S. C. 161, 232 S. E. (2d) 504 (1977); *Wood v. Wood*, 269 S. C. 600, 239 S. E. (2d) 315 (1977); *Atkinson v. Atkinson*, S. C., 309 S. E. (2d) 14 (App. 1983). The amount of time necessarily devoted to the investigation and preparation of the case, appearance at three different hearings, and preparation of trial briefs, together with the necessary expenditures to locate the child and father and to bring witnesses from West Virginia for hearings in South Carolina clearly justify the award of more reasonable suit money. *See* §§ 20-3-140, 20-3-120, Code of Laws of South Carolina, 1976, as amended. We, therefore reverse the award of attorney's fees and remand for a redetermination in light of this opinion.

For the reasons stated, the judgment of the family court is reversed and the cause remanded for entry of judgment for

the mother. On remand the family court shall make appropriate findings and award attorney's fees and expenses pursuant to § 20-3-140 and § 20-7-798(c), Code of Laws of South Carolina, 1976, as amended. The mother's costs of appeal plus an attorney's fee of $750.00 shall be taxed in the family court as costs of the appeal and added to the attorney's fees and expenses awarded by the family court.

Reversed and remanded.

SANDERS, C. J., and GARDNER, J., concur.