**Keith GLANZNER, Respondent,**

v.

**STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, Appellant.**

**In re CUSTODY OF Bradley Carl GLANZNER.**

**Suzanne E. GLANZNER, Petitioner,**

v.

**Keith M. GLANZNER, Gary Glanzner, and Paula Glanzner, Respondents.**

Nos. 59151, 60773.

Missouri Court of Appeals, Eastern District, Writ Division Six.

May 26, 1992.

Application to Transfer Denied Sept. 22, 1992.

Curtis G. Hanrahan, Jefferson City, Dewey S. Godfrey, Jr., St. Louis, for appellant.

Allan F. Stewart, Clayton, for respondent.

GRIMM, Judge.

In this case of first impression, we are called upon to resolve conflicting child custody decrees from California and Missouri. The California decree granted custody to mother; a later Missouri decree granted custody to father. Under the federal Parental Kidnapping Prevention Act (PKPA), we are required to hold that the California decree is not entitled to interstate enforcement because Missouri was the child's "home state." We therefore deny mother's petition for writ of habeas corpus and quash our temporary order.

This court consolidated a companion case which was pending on appeal. In that case, the State appeals from the trial court's judgment reversing a decision of the Department of Social Services which ordered father to pay spousal and child support arrearage of $11,118.00. We affirm the child support order and reverse the spousal support order.

## I. Background

Suzanne E. Glanzner and Keith W. Glanzner are the mother and father of Bradley Carl Glanzner. Gary and Paula Glanzner are Bradley's paternal grandparents.

Mother and father were married in Illinois on September 5, 1981. Father was then in military service and the parties lived in Tennessee. Bradley was born in St. Louis on August 13, 1982.

Mother and, after his birth, child, lived with paternal grandparents in St. Louis from June, 1982, to November, 1983; father was stationed in Okinawa during that time.

From November, 1983, to January, 1985, mother, father, and child all lived in California where father was stationed. Mother had lived in California for seven years prior to her marriage.

In January, 1985, mother, father, and child came to Missouri. All three of them resided in Missouri until mother and child returned to California on October 29, 1985.

On December 18, 1985, mother filed a petition for legal separation and custody [1] in California. Father was personally served January 13, 1986. He filed a motion to quash service on the grounds that California should not exercise jurisdiction over the child custody issue.

In the meantime, on January 10, 1986, father filed a petition for dissolution in St. Louis County. Mother was apparently served on July 17, 1986.

Proceedings continued in California. On June 4, 1986, the California court conducted a hearing on father's motion to quash. The hearing included a phone consultation with a judge in St. Louis County.[2]

On June 18, 1986, the California court found that "[t]he state in which the minor child resided for 6 consecutive months prior to the filing of the petition was Missouri." However, the court noted the child had now resided in California for 7 months. Although child had family members in both states, the court found "California has the most significant contacts with the minor child." As a result, the court held that under the Uniform Child Custody Jurisdiction Act (UCCJA), California was the proper jurisdiction in which to adjudicate the claim. A formal order incorporating that finding was entered July 2, 1986.

On August 12, 1986, following a hearing, the California court granted custody of child to mother "pending trial or until further order of this court." Father was ordered to pay $253 per month child support, as well as $151 per month spousal support, commencing August 15, 1986. Father was given reasonable visitation rights with child within California.

On November 3, 1986, the California court dissolved the marriage of the parties. Mother was granted custody of the child, and father was granted reasonable visitation rights in California. In addition, father was ordered to pay child support and spousal support.

In the St. Louis County action filed January 10, 1986, mother filed a special appearance and objection to jurisdiction about August 15, 1986. She attached a copy of the June 4, 1986 order wherein the California court assumed jurisdiction over the child custody issue. On September 5, 1986, the St. Louis County court overruled mother's objections to jurisdiction. A default decree of dissolution was granted on September 26, 1986; the decree gave custody of child to father, and reasonable visitation rights to mother.

From October 29, 1985, until the summer of 1991, mother had continuous physical custody of child. Father admits he has not visited the child since that date. However, he claims he has attempted to exercise his rights, but mother has interfered with his efforts by "frequently moving, changing her address and not apprising [him] as to the whereabouts of the minor child."

In the spring of 1991, paternal grandparents visited mother and child in California. After returning to Missouri, grandmother phoned mother and asked if child could come to Missouri for a visit during the summer vacation. After receiving assurances from grandparents they would return the child, mother consented. Grandparents purchased a round trip airline ticket for child and sent it to mother. Child flew from California to St. Louis on July 27, 1991; he was to return on September 1, 1991.[3]

Child did not return on September 1. On September 13, mother filed a petition for writ of habeas corpus with this court. Following a brief hearing, this court ordered

---

**1.** On July 7, 1986, the petition was amended to seek a dissolution of marriage.

**2.** The California court proceedings indicate the California judge spoke with "Judge Edwards." The Hon. Ninian M. Edwards was then a judge in St. Louis County.

**3.** Grandparents state their original understanding was the visit was to go until September 3, but mother changed the date to September 1.

custody of child returned to mother until further order. Our order was conditioned on mother filing a bond, which she filed.

In addition, we consolidated the appeal of the Division of Child Support Enforcement. That appeal involves the trial court's order finding the California court lacked jurisdiction to enter the custody and support order.

## II. Dissolution Proceedings

In his answer to the petition for writ of habeas corpus, father claims he is entitled to custody of child pursuant to the St. Louis County decree of dissolution granted September 26, 1986. He contends the California orders "were contrary to the Uniform Child Custody Jurisdiction Act (Section 452.440, R.S.Mo.1986 *et seq.*) and the Parental Kidnapping Prevention Act (28 U.S.C. § 1738A)."

In 1973, California adopted the UCCJA with some modifications. Cal.Civil Code §§ 5150–5174 (West 1983). Missouri adopted the act in 1978, also with some modifications. Sections 452.440–452.550, RSMo 1986.

Under the California and Missouri versions of the UCCJA, a court has jurisdiction to make a child custody determination if two conditions are met. First, the child and at least one parent has a significant connection with the state; second, substantial evidence concerning the child's present or future care, protection, training, and personal relationships is available in the state. Cal.Civil Code § 5152(1)(b) (West 1983) and § 452.450.1(2), RSMo 1986. In the summer of 1986, the California court determined it had jurisdiction because mother, child, and maternal grandmother were in California, as well as "neutral third parties from the school" who could testify.

■ The PKPA does not grant or deny initial jurisdiction to a state.[4] *Mancusi v. Mancusi,* 136 Misc.2d 898, 519 N.Y.S.2d 476, 478 (Fam.Ct.1987). Rather, it governs only the enforcement and modification of foreign decrees and the treatment of concurrent proceedings. Coombs, *Interstate Child Custody: Jurisdiction, Recognition, and Enforcement* 66 Minn.L.Rev. 711, 765 (1982). Thus, the PKPA did not prevent California from exercising jurisdiction.

■ Further, the prohibition against simultaneous proceedings applies only to the state in which proceedings are subsequently commenced; the petition in California was filed before the petition in Missouri. § 452.465.1, RSMo 1986 and Cal.Civil Code § 5155(1) (West 1983). Thus, California was not prohibited from hearing mother's case.

Also, father contends the California court did not have personal jurisdiction over him. Mother disagrees: father was personally served and he does not contest that fact. Father's California attorney, however, did file a motion to quash service; a copy of that motion was not furnished us.

On June 4, 1986, the court conducted a hearing on the motion to quash. Father's California attorney was present. Following the hearing, mother's attorney was directed to prepare a proposed order reflecting the June 4 proceedings. The proposed order was submitted to father's attorney for examination. On June 26, 1986, father's attorney "approved [the proposed order] as conforming to the order of the court." In the order signed July 2, 1986, the court indicates the grounds of the motion to quash were "that California should not exercise jurisdiction over the issue of custody of the minor child."[5] Nothing before us indicates father's appearance was a "special or limited" appearance or that he challenged personal jurisdiction.

■ Under California procedure, a general appearance "is equivalent to personal service of summons on such party." Cal.Civil Procedure Code § 410.50(a) (West 1983). If a defendant wishes to object that

---

4. We observe in passing that the title given to the PKPA in 28 U.S.C.A. § 1738A (West Supp. 1992) is Full faith and credit given to child custody determinations.

5. A deputy county court clerk's minutes also reflect that father's motion to quash was "on the grounds that California should not exercise jurisdiction over the issue of custody of the minor child."

the court does not have "jurisdiction over his person, he must specially appear for that purpose only;" otherwise, he waives any objection to jurisdiction. *California Dental Ass'n v. American Dental Ass'n,* 23 Cal.3d 346, 152 Cal.Rptr. 546, 549, 590 P.2d 401, 404 (in bank 1979). Thus, from the record, it appears that father waived any objections to jurisdiction.

■ However, as we explain below, under the PKPA, it is immaterial to the child custody question whether California had personal jurisdiction over father. This is because Missouri was the child's home state under both the California and Missouri versions of the UCCJA, as well as the PKPA.

Missouri defines "home state" as "the state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, [or] a parent . . . for at least six consecutive months; . . ." § 452.-445(4), RSMo 1986. California has a similar definition. Cal.Civil Code § 5151(5) (West 1983). A Missouri court has jurisdiction if Missouri is the child's home state or had been the child's home state within six months before the commencement of the proceeding. § 452.450.1(1)(a) and (b), RSMo 1986.

Mother, father, and child lived in Missouri for approximately nine months from January, 1985, until mother and child moved to California on October 29, 1985. Since child had been in California approximately 51 days when mother filed her petition December 18, 1985, California was not the child's home state. Cal.Civil Code §§ 5151(5) and 5152(1) (West 1983). Father filed his petition on January 10, 1986. Since child had been in Missouri for approximately nine months and was absent from the state only for approximately 74 days before father filed, Missouri "[h]ad been the child's home state within six months before commencement of the proceeding."

**6.** Hereafter, "28 U.S.C.A. § 1738A (West Supp. 1992)" is referred to only as "1738A."

**7.** The Missouri UCCJA provides that "[p]roof of service outside this state may be made by affidavit of the individual who made the service . . . in the manner prescribed by . . . the law of the place in which the service is made." § 452.460,

§ 452.450.1(1)(b), RSMo 1986; *see also* 28 U.S.C.A. 1738A(b)(4) (West Supp.1992).[6] Thus, the Missouri court had jurisdiction. *See Hempe v. Cape,* 702 S.W.2d 152, 161 (Mo.App.S.D.1985).

Mother contends the Missouri court was without jurisdiction because (1) only personal service on her was attempted, (2) the return of service was defective, and (3) the only appearance mother made was a "special appearance and objection to jurisdiction." Father admits because the return of service was defective, "such service was not sufficient to confer personal jurisdiction."

■ However, the parties agree that in personam jurisdiction is not necessary to dissolve a marriage or determine child custody. *In re Marriage of Breen,* 560 S.W.2d 358, 361 (Mo.App.W.D.1977); *In re Marriage of Southard,* 733 S.W.2d 867, 868 (Mo.App.S.D.1987). Mother was served with the summons and petition on July 17, 1986. Although she entered a special appearance, she did not object that the service or return of service was insufficient. The notice given mother was sufficient to satisfy the requirements of § 452.-460, RSMo 1986.[7]

■ The question then becomes which decree is entitled to be enforced. Under the PKPA, any decree "made consistently with the provisions of [the PKPA shall be enforced] by a court of another State." § 1738A(a).

Section 1738A(c) and (d) provide that:

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

RSMo 1986. In California, proof of return of service is sufficient if the person makes proof by affidavit showing the time, place, manner, and surrounding facts. Cal.Civil Procedure Code § 417.10 (West 1983). Thus, the UCCJA notice provisions appear to be satisfied.

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and ...;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction ...; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this sections continues....

Section 1738A(c) imposes two conditions in order to make a court's child custody determination consistent with the PKPA, and therefore entitled to full faith and credit. First, the court must have jurisdiction under the law of the state. The California court explicitly and the Missouri court implicitly, each held it met this condition under the UCCJA; California reached this conclusion through the "significant connection" test, Missouri through the "home state" test.

Second, one of the conditions enumerated in § 1738A(c)(2) must be met. If the petition is filed in the child's home state, the second condition is satisfied. Because Missouri had been child's home state within six months of filing, the Missouri petition satisfied § 1738A(c)(2)(A).

As previously noted, California did not meet the home state requirements. Thus, we consider whether California met any other requirements for acting consistently with the PKPA as enumerated in § 1738A(c)(2).

Section 1738A(c) provides that a state's child custody determination is consistent with this section if "it appears that no other State would have jurisdiction under [the home state provisions of paragraph (A)]." § 1738A(c)(2)(B). California did not meet this requirement because the child had a home state—Missouri. Thus, § 1738A(c)(2)(B) is not applicable.

The third condition in this section of the PKPA applies only if the child has been (1) abandoned or (2) subjected to or threatened with mistreatment or abuse. § 1738A(c)(2)(C). Neither is applicable here.

Likewise, the fourth and fifth conditions do not apply. The fourth condition applies if "it appears that no other State would have jurisdiction under [the other subparagraphs] or another State has declined to exercise jurisdiction." § 1738A(c)(2)(D). Missouri had jurisdiction and did not decline to exercise it.

The fifth condition applies if "the court has continuing jurisdiction pursuant to subsection (d)." § 1738A(c)(2)(E). Subsection (d) applies only if the child custody determination was made consistently with the PKPA. § 1738A(d). Here, the California court had not entered a decree consistently with the requirements of the PKPA.

The PKPA requires a state to give full faith and credit only to those child custody determinations made consistently with its provisions. § 1738A(a). Under the PKPA, California would be required to give full faith and credit to the Missouri decree because the Missouri proceedings comply with the PKPA. On the other hand, the PKPA precludes Missouri and other states from giving full faith and credit to the California decree because it did not meet any of the enumerated conditions in § 1738A(c)(2).

Our conclusion is supported by decisions in other jurisdictions. In *Mancusi*, 519 N.Y.S.2d 476, father filed an action for child custody in New York. Thereafter, mother filed a similar action in Arizona.

*Id.* at 477. Arizona was the children's "home state." *Id.* at 479. The New York court observed that "the PKPA makes it judicially imprudent for one state court to exercise jurisdiction when another state court fulfills the requirements and wishes to exercise 'home state' jurisdiction. [citation omitted]. If conflicting custody decrees were issued, only the custody decree of the 'home state' court would be entitled to full faith and credit under federal law." *Id.* at 479. The New York court vacated its custody order. *Id.* at 480; *accord Sams v. Boston,* 181 W.Va. 706, 384 S.E.2d 151, 157 (1989).

In *Bolger v. Bolger,* 678 S.W.2d 194 (Tex. App.1984), father filed for custody in Texas and an order was entered granting him custody of the children. *Id.* at 195. A month later, mother filed for custody in New York and obtained a custody order. *Id.* New York was the children's "home state." *Id.* at 196. The *Bolger* court held "the Texas action was not consistent with the provisions of the [PKPA] because the children's 'home state' was New York." *Id.* As a result, "the Texas court could not acquire jurisdiction over the children." *Id.; see also Wachter v. Wachter,* 439 So.2d 1260 (La.App.1983).

■■■ Implicit in our holding is recognition that the PKPA preempts conflicting state law in interstate custody matters. "Congressional enactments which do not expressly exclude state legislation in the field nevertheless override state laws with which they conflict. U.S. Const. art. 1, § 8. In deciding whether state and federal laws are so inconsistent that state law must give way, we must 'determine whether, under the circumstances of this particular case [the state's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *National City Lines, Inc. v. LLC Corp.,* 687 F.2d 1122, 1128–29 (8th Cir.1982) (citations omitted).

Section 1738A does not expressly exclude state legislation. However, Congress enacted the PKPA in part to avoid jurisdictional competition and to facilitate the enforcement of custody decrees in sister states. Both exist under the UCCJA. As a result, numerous states have recognized that the PKPA preempts conflicting portions of the UCCJA. *See, e.g., Archambault v. Archambault,* 407 Mass. 559, 555 N.E.2d 201, 208 (1990) (excellent discussion of preemption); *Sams v. Boston,* 181 W.Va. 706, 384 S.E.2d 151, 156 (1989); *Enslein v. Enslein,* 112 A.D.2d 973, 492 N.Y.S.2d 785, 787 (1985); *Marks v. Marks,* 281 S.C. 316, 315 S.E.2d 158, 160 (1984); *Voninski v. Voninski,* 661 S.W.2d 872, 876 (Tenn.App.1982).

We recognize the preemption of the PKPA where it conflicts with our state law. To do otherwise would frustrate the sound purposes of the PKPA.

Here, Missouri was the only state which could enter a decree consistent with the PKPA unless Missouri declined to exercise jurisdiction. Missouri did not decline and its decree is enforceable throughout the United States. No other state's decree would be. To hold otherwise would result in a decree which was subject to the same problems as those entered pre-PKPA, a system Congress found was inadequate.

Mother contends, however, that § 452.-465.1, RSMo 1986, precluded the Missouri court from exercising jurisdiction. This section directs Missouri courts not to exercise jurisdiction "if, at the time of filing the petition, a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity" with the UCCJA. As a result, mother argues that Missouri was required to recognize and enforce the California decree.

Mother's contention might be tenable if we looked only at the California and Missouri UCCJA provisions, and not at the PKPA. However, some would argue that even under the UCCJA, preference to home state jurisdiction should be given. *See Hattoum v. Hattoum,* 295 Pa.Super. 169, 441 A.2d 403, 405 (1982) ("The Act treats as preferable the 'home' jurisdiction"); *Prickett v. Prickett,* 498 So.2d 1060, 1061 (Fla. App.1986) ("The general rule is that the 'home state' of the child should have jurisdiction."). Under this interpretation, California may not have been exercising jurisdiction substantially in conformity with the UCCJA.

More importantly, one of the reasons Congress adopted the PKPA was "to establish national standards under which the courts of such jurisdictions will determine ... the effect to be given by each such jurisdiction to such decisions by the courts of other such jurisdictions." § 1738A historical and statutory notes. The national standard which Congress established requires states to give full faith and credit to child custody orders which are "consistent with the provisions" of the PKPA. § 1738A(a) and (c). The California order is not.

Mother's final argument relies on a hypothetical situation taken from Coombs' article. *Coombs,* 66 Minn.L.Rev. at 787. The hypothetical situation has some similarity to the facts here, and Coombs says that the non-home state could "decide the child's custody without violating the federal or, presumedly, the state statute." We agree.

However, the issue before us is not whether the initial California decree violated the UCCJA or PKPA when entered. Rather, the question is whether that decree is entitled to be enforced. Under the PKPA, it is not. As Coombs says on page 788, "Although possessing jurisdiction under its own law, a court in which an initial custody proceeding is filed may consider whether the exercise of that jurisdiction would be consistent with section 1738A. *The resulting decree would be entitled under the federal statute to interstate enforcement only if made consistently with section 1738A." Id.* at 788 (emphasis supplied).

Mother's petition for a writ of habeas corpus is denied, and we quash our temporary order.

### III. Child Support Obligation

We turn now to the State's appeal. It appeals the trial court's judgment reversing a decision of the Department of Social Services. The Department ordered father to pay support arrearage of $11,118.00. The trial court found the Department's decision was "not supported by competent and substantial evidence upon the whole record [because] the decision is based upon a custody and support Order entered by a California Court without jurisdiction under the provisions of the [PKPA] and there was a lack of minimum contacts by [father] with the State of California for the California Court to obtain personal jurisdiction over [father]."

On appeal, the State urges two points. First, the trial court erred in failing to enforce the California child custody and support orders because they complied with the UCCJA. Second, the trial court erred in finding that father had a lack of minimum contacts with the State of California for the California Court to obtain personal jurisdiction over him. We consider these points together.

■ The PKPA precludes the enforcement of the California child custody order. Because that child custody order cannot be enforced, it follows that a child support award based on that child support order also fails. It would be incongruous for a Missouri court to enforce a California child support award when the Missouri court is prohibited from enforcing the California child custody order. Thus, that portion of the trial court's order reversing the Department of Social Services decision as it pertains to child support is affirmed.

■ A portion of the Department's order, however, concerned spousal support of $2,642.50. The PKPA is applicable to child custody orders; nothing in that act addresses spousal support.

We again observe that the record before us reflects father did not object in the California trial court to California's jurisdiction over him. Rather, he challenged only its jurisdiction as it pertained to child custody. As such, he waived any right he had under California law to claim that jurisdiction had not been obtained. *California Dental,* 152 Cal.Rptr. at 549, 590 P.2d at 404.

The Due Process Clause "does not contemplate that a state may make binding a judgment in personam against an individual ... with which the state has no contacts, ties, or relations." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95, 104 (1945). Here, however, father had sufficient contacts with California.

Father and mother lived in lawful marriage[8] with their child in California from November, 1983, to January, 1985. Mother filed her petition on October 29, 1985, and father was personally served January 13, 1986, about one year after he left California. *Cf. Kulko v. Superior Court of California*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) (Father's only connection with California was a three-day stopover en route to Korea and a 24-hour stopover on his return which occurred 12 years before separation). Such temporary visits are no "basis for the assertion of *in personam* jurisdiction." *Id.* 436 U.S. at 93, 98 S.Ct. at 1697, 56 L.Ed.2d at 142.

The trial court's judgment reversing the Department's order concerning spousal support of $2,642.50 is reversed. Costs are assessed equally to father and mother.

CARL R. GAERTNER, C.J., and SIMON, J., concur.

---

**8.** Compare Missouri's rule 54.06 which authorizes a general judgment in personam on any person "who has lived in lawful marriage within this state." Rule 54.06(b).