**Dorothy STEWART, Appellant,**

v.

**Timothy STEWART, Respondent.**

**No. WD 49992.**

Missouri Court of Appeals,
Western District.

Aug. 29, 1995.

Jacqueline K. McGreevy, Parkville, for appellant.

Nancy Caviar, Kansas City, for respondent.

Sherrill Rosen, Kansas, Guardian ad Litem.

Before BERREY, P.J., and ULRICH and ELLIS, JJ.

ULRICH, Judge.

Dorothy Stewart appeals from the order modifying the September 30, 1991, decree of dissolution which terminated her marriage to Timothy Stewart. The order grants the parties joint legal custody of their minor son, Timothy Stewart, Jr., born April 24, 1986, but directs that Mr. Stewart have primary physical custody of the child during the school year and that Ms. Stewart have physical custody of the parties' son during summer months. The order also provides that the parties' son, in residing with his father, is allowed to reside in Kansas, and further provides that the state of Kansas will have jurisdiction over the case. Ms. Stewart contends the trial court erred by (1) granting primary physical custody of the parties' son to Mr. Stewart, (2) allowing the child to be removed from Missouri to the state of Kansas, and (3) deferring future jurisdiction to the Kansas courts. The order modifying the decree of dissolution is affirmed.

After the parties' separation in 1988, Ms. Stewart resided in Jackson County, Missouri, and Mr. Stewart resided in Olathe, Kansas. Prior to the dissolution of their marriage, the parties made an out-of-court arrangement in which their child would attend school in Olathe. The agreement was intended to take advantage of their access to what the parties believed to be an excellent school district. The facts are disputed as to whether the child resided with Mr. Stewart and visited his mother or instead attended school during the day returning to Ms. Stewart's home in Missouri in the evening.

In January of 1992, Ms. Stewart, dissatisfied with the arrangement, obtained Timothy Jr.'s records from the Olathe school he had attended and enrolled the child in Center Elementary School in Kansas City (Center).

Mr. Stewart then sought and was granted temporary custody of Timothy Jr. through a Kansas court order signed January 28, 1992. The Kansas judge ordered joint legal custody of the child between the child's parents with Timothy's primary residence with his father subject to reasonable visitation by the mother. The child then returned to his father and completed his kindergarten year in Olathe. Mr. Stewart also filed a Motion to Modify Decree of Dissolution of Marriage as to child custody and support in the Circuit Court of Jackson County, Missouri on February 7, 1992.

In February of 1993 the Kansas court determined that it lacked jurisdiction and

dismissed the Motion to Modify and set aside all temporary orders. This in effect returned custody to Ms. Stewart. The child stayed in the Olathe school system through the remainder of his first grade year but was enrolled in Center Elementary in Missouri for the fall of his second grade year.

In September of 1993, the Circuit Court of Jackson County began hearing the Motion to Modify. On August 5, 1994 the trial court found that a change in circumstances had occurred which was substantial and continuing requiring modification of the original dissolution decree. The Court applied the *Fuchs* test and determined that Timothy Jr. should be allowed to leave the state and reside primarily in Kansas with his father. Since the child would now be residing in Kansas with his father, the court deferred jurisdiction of any other matters pertaining to this case to Kansas Courts.

### Change of custody

Ms. Stewart alleges as her first point on appeal that the trial court erred in finding a change in circumstance had occurred and that insubstantial evidence supported the transfer of primary physical custody of Timothy Jr. to Mr. Stewart.

The court shall not modify a prior custody decree unless "it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that the modification is necessary to serve the best interest of the child." § 452.410 RSMo 1994; *Shoemaker v. Shoemaker*, 812 S.W.2d 250, 254 (Mo. App.1991).

■ The trial court's judgment will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence or erroneously declares or applies the law. *Broocke v. Broocke*, 873 S.W.2d 330, 333 (Mo.App.1994); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc.1976). If review of the evidence does not produce a firm belief the trial court reached the wrong result then the judgment will be affirmed. *H__ v. H__*, 637 S.W.2d 432, 434 (Mo.App. 1982).

■ Substantial evidence is in the record to support the trial court's judgment. The minor child in this case suffers from medical, educational and social problems. Ample evidence discloses that Mr. Stewart took a conscientious approach to assist his son. The child's encopresis began in January of 1992 and persists to the present. When the child transferred schools from the Olathe school district the teacher at Center was not warned by Ms. Stewart that he had manifested this problem. Not until a parent teacher conference with Mr. Stewart, some months into the semester, was she informed. The child also displayed social and academic problems.

After a November parent-teacher conference, the mother agreed to take the child to Children's Mercy Hospital to uncover the cause of the problems. Ms. Stewart did not follow through as promised. Mr. Stewart, upon being notified of Ms. Stewart's inaction, took the child to Children's Mercy the following day. After several visits with a pediatrician, a daily medical treatment was initiated to address the encopresis. During these visits the child was also diagnosed with Attention Deficit Disorder (ADD). Ritalin was prescribed as part of the treatment for ADD. Both parties agreed that the use of Ritalin had resulted in academic as well as social improvements. However, the continued treatment of these problems requires consistency and dedication by the parent who has custody of Timothy Jr.

■ Appellate courts defer to the trial court's assessment of witness credibility and accept the trial court's resolution of conflicting evidence. *K.J.B. v. C.A.B.*, 883 S.W.2d 117, 122 (Mo.App.1994). The trial court is presumed to have reviewed all the evidence and based its decision on the best interest of the child. *Id.* Although evidence in the record may support a different conclusion, the trier of fact has the right to reject evidence or believe contradictory evidence. *Jackson v. Jackson* 764 S.W.2d 526, 527 (Mo. App.1989), citing *Ware v. Ware*, 647 S.W.2d 582, 584 (Mo.App.1983). The record discloses that substantial evidence supports the finding that a change in circumstance has occurred since the decree of dissolution, and

granting primary physical custody of the parties' son to Mr. Stewart would be in the best interest of the child.

### Removal and Jurisdiction

Ms. Stewart's second point on appeal alleges that the trial court misapplied the law in allowing Mr. Stewart to remove the child to Kansas. She also claims the trial court erroneously declared and applied the law in granting Kansas jurisdiction over any other matters in this case. For ease of discussion these two arguments will be dealt with separately.

### A. Removal

In *Fuchs v. Fuchs*, 887 S.W.2d 414 (Mo.App.1994), the court noted four relevant factors in determining whether a custodial parent's relocation is proper.

1. The prospective advantages of the move in improving the general quality of life for the custodial parent and child.

2. The integrity of the custodial parent's motives in relocating (whether primarily to defeat or frustrate visitation and whether the custodial parent is likely to comply with substitute visitation orders).

3. The integrity of the non-custodial parent's motives for opposing relocation and the extent to which it is intended to secure a financial advantage with respect to continuing child support, and

4. The realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is permitted.

*Fuchs* at 416. The best interest of the child will supervene to allow the custodian to remove the child to another state, even if to the disadvantage or inconvenience of the noncustodial parent. *Samuels v. Samuels,* 713 S.W.2d 865, 868 (Mo.App.1986).

In this case the trial court found that granting primary custody to Mr. Stewart and allowing him to remove the child to Kansas would improve the quality of life for the parties' son. As discussed above, the record presents substantial evidence to support the decision that a change of primary custody to Mr. Stewart was in the child's best interest.

Mr. Stewart's reasons for relocating are not for the purpose of frustrating visitation. He has lived in Kansas for several years. He did not recently relocate in order to undermine Ms. Stewart's ability to visit her child.

Additionally, the opportunities for visitation are sufficient enough that Ms. Stewart can preserve and foster her relationship with the child. One relevant factor is a comparison of the geographic aspects of the alternative places of residence. *Michel v. Michel,* 834 S.W.2d 773, 776 (Mo.App.1992). The relocation in this situation provides closer proximity to the noncustodial parent than had the child been moved to another area of Missouri. Even though relocating out of the State of Missouri, the child will still be within the Kansas City metropolitan area and accessible to his mother, with ample opportunity for a continuing relationship between mother and child. In *In re the Marriage of Bard,* 603 S.W.2d 108, 109 (Mo.App.1980), the court noted that in our highly mobile society, confining the custodial parent to a geographic area is unrealistic if removal is in the best interest of the child.

The trial court did not erroneously apply the law in allowing the child to be removed to Kansas.

### B. Jurisdiction to Kansas

Ms. Stewart's next argument is that even if removal was proper, the trial court erred in conferring jurisdiction over any other matter that may arise in the case to the Kansas courts. A court's jurisdiction to determine custody matters is controlled by the Uniform Child Custody Jurisdiction Act (UCCJA) codified in Missouri as sections 452.440–452.550, RSMo 1994 and in Kansas as K.S.A. 38–1301 to 38–1326.

Under section 452.450, jurisdiction over a custody matter can be based on four grounds: 1) If this state is the home state or has been the home state within six months and one parent continues to live in the state; 2) it is in the best interest of the child for this state to assume jurisdiction because

there is a significant connection with the state and substantial evidence concerning the child is in this state; 3) the child is physically present within the state and has been abandoned or an emergency exists making it necessary to protect the child; or 4) it appears that no other state would have jurisdiction under any of the other grounds or another state has declined to exercise jurisdiction on the ground that this state is a more appropriate forum. § 452.450, RSMo 1994.

Where one parent continues to reside in Missouri after a dissolution, Missouri continues to have preferential jurisdiction even if the child and the other parent have left the state. *Dobbs. v. Dobbs*, 838 S.W.2d 502 (Mo.App.1992). However, this authority only establishes the basis for initial assertion of jurisdiction. Kansas previously decided that it did not have jurisdiction because Missouri had preferential jurisdiction as the child's home state. The Kansas court may now assert jurisdiction, if needed, since it has significant connection and Missouri has declined to exercise its jurisdiction in future matters in this case.

A court which has jurisdiction under The UCCJA may decline to assert jurisdiction if it finds that it is an inconvenient forum and that under the circumstances another forum would be more appropriate. § 452.470.1, RSMo 1994. Since the child will be living predominately in the state of Kansas, the trial court did not error in concluding that Kansas would be a more appropriate forum for other matters arising in this case.

Judgment affirmed.

All concur.