**Robert J. PAYNE, Appellant,**

v.

**Susan E. WEKER, Respondent.**

**Robert J. PAYNE, Appellant,**

v.

**Susan E. WEKER, Respondent.**

Nos. WD 51159, WD 51160.

Missouri Court of Appeals, Western District.

March 12, 1996.

Daniel H. Bowers, Kansas City, for appellant.

James C. Welch, Raytown, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and BRECKENRIDGE, JJ.

FENNER, Chief Judge.

Robert J. Payne, father, appeals the dismissal of his Motion to Modify Decree of Dissolution—Change of Custody and Motion for Contempt and Order to Show Cause by the Circuit Court of Jackson County based on a finding that it was in the best interests of the child for a court in the state of Maryland to assume jurisdiction and that Missouri was an inconvenient forum to make a custody determination under the circumstances of the case.

Father and Susan E. (Payne) Weker, mother, are the parents of Courtney Elizabeth Payne, born August 14, 1987, in Kansas City, Missouri. In July 1990, mother left Missouri along with Courtney to visit Courtney's maternal grandmother in Maryland. Thereafter, mother determined she would not return to Missouri or to Courtney's father.

Father then initiated a divorce proceeding in Jackson County, Missouri, at about the same time mother initiated a similar proceeding in Maryland. Both filed motions to dismiss the other's petition. The Maryland courts dismissed mother's petition for lack of jurisdiction and the Jackson County, Missouri Circuit Court assumed jurisdiction over the dissolution proceedings.

The parties eventually reached a settlement and a Marital Dissolution Agreement was executed by both parties on August 21, 1991. A Decree of Dissolution was entered in the Circuit Court of Jackson County on the same day.

Pursuant to the Decree of Dissolution, the parties were awarded joint legal custody of Courtney, with mother designated as the primary physical custodian. Provisions specifying father's custodial periods with Courtney were set forth in the decree. Courtney's Christmas vacation period each year was to be divided between the parents. Additionally, father was awarded temporary custody for an eight week period during the summer months, which was expanded to nine weeks in 1994. The Thanksgiving holiday was to alternate between the parents and father was given temporary custody during Courtney's spring break from school.

In 1992, the original decree was modified pursuant to a motion by father. The parties entered into a stipulation relating to matters within father's Motion for Contempt and modifying certain terms in the initial decree, including provisions relating to transportation to facilitate father's custodial periods and the extension of the summer period of temporary custody to ten weeks.

Since the date of the original decree, father has continued to reside in the former marital home in Missouri while mother and Courtney have continuously resided in Maryland, subject to the periods in which father has temporary custody of Courtney.

On February 3, 1995, father filed a Motion for Contempt and Show Cause Order alleging that mother had violated the decree of dissolution by refusing to permit father to exercise visitation during the 1994 Christmas vacation period. Father also alleged problems related to previous visitation periods and that mother had failed to provide information concerning Courtney's school progress, extra-curricular activities, and health care. An order to show cause was entered on February 24, 1995, directing mother to appear before the court to respond to father's motion.

Father also filed a Motion to Modify Decree of Dissolution—Change of Custody on February 3, 1994, with nearly identical allegations to those contained in his motion for contempt, claiming that it was in the best interest of Courtney that primary physical custody be transferred to him.

Mother chose not to submit to the jurisdiction of the Jackson County Circuit Court and, instead, filed a motion to dismiss, together with suggestions in support thereof, alleging Missouri lacked subject matter and personal jurisdiction to proceed upon appellant's motions.

Representatives of the parties appeared before the court on April 24, 1995. Counsel for mother presented her motion to dismiss to the court. The court gave counsel for father the opportunity to request time to respond to the motion, but counsel chose instead to argue the case. The suggestions in support of the motion alleged that Maryland was Courtney's home state, and as such, Maryland had the most significant connections with the child and the litigants. In support of father's position, it was argued that because he still resides in Missouri and Courtney still has some significant contacts to Missouri, our courts retained subject matter jurisdiction in modification and enforcement proceedings.

The court heard no evidence other than the statements of counsel on mother's motion to dismiss. After listening to the arguments and presumably reviewing the case file, the trial court granted mother's motion to dismiss, dismissed father's motion for contempt and motion to modify, and dissolved the show cause order. The trial court found that Maryland was the child's home state and that Courtney's best interests were served if Maryland assumed jurisdiction. Additionally, the court determined that Missouri was an inconvenient forum under § 452.470, RSMo 1994.[1] Finally, the court found that father was attempting to obtain custody of Courtney and that the motion for contempt was merely a disguise for a request for modification of custody. Appellant timely appealed the trial court's decision to this court.

## I. STANDARD OF REVIEW

The standards set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) govern our review of this matter. We must affirm the order of the trial court unless: (1) there is no substantial evidence to support the determination by the court that it did not have jurisdiction to hear father's motion for modification and motion for contempt; (2) the determination by the trial court that it did not have jurisdiction was against the weight of the evidence; or (3) the determination by the trial court that it did not have jurisdiction was an erroneous declaration of the law or erroneously applied the law. *Lydic v. Manker*, 789 S.W.2d 129, 130 (Mo.App. 1990).

---

1. All references to Missouri statutes are to the Revised Statutes of Missouri, 1994, unless otherwise noted.

## II. CHANGE OF CUSTODY—MODIFICATION JURISDICTION

A court may not modify a prior custody decree unless it has jurisdiction under the provisions of § 452.450, our state's codification of the Uniform Child Custody Jurisdiction Act ("UCCJA"). Two of the sets of circumstances prescribed in § 452.450 relate to situations like that before us in which the child who is the subject of a child custody proceeding no longer resides in the state. *Lydic,* 789 S.W.2d at 131.

Section 452.450.1(1) provides that Missouri courts have jurisdiction if Missouri is the "home state"[2] of the child at the time of commencement of the proceeding or had been the child's home state within six months before commencement and the child is absent from Missouri for any reason. *Id.* Both parties concede in their briefs that Maryland, not Missouri, is the home state of Courtney. Consequently, jurisdiction will not lie under section 452.450.1(1).

■ Section 452.450.1(2) provides that a Missouri court has jurisdiction to make child custody determinations if it is in the best interest of the child that a Missouri court assume jurisdiction because: (a) the child and his parents, or at least one litigant, have a significant connection with this state; and (b) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. *Id.* Under this provision, Missouri continues to have preferential jurisdiction to hear subsequent custody and visitation matters even if the child and a parent have moved to another jurisdiction. *Stewart v. Stewart,* 905 S.W.2d 114, 118 (Mo.App. 1995); *Dobbs v. Dobbs,* 838 S.W.2d 502, 503 (Mo.App.1992). This is not, however, a conclusive determination of jurisdiction. *See Stewart,* 905 S.W.2d at 118. A court generally cannot make a custody determination if a child has lived out of the state for more than six months. *Levis v. Markee,* 771 S.W.2d 928, 931 (Mo.App.1989). In determining whether the trial court was correct in ruling that jurisdiction would not lie under this

section, we are guided by the Commissioners Note to this section in the UCCJA, quoted by the Eastern District in *Timmings v. Timmings,* 628 S.W.2d 724, 726–27 (Mo.App. 1982):

> Paragraph (2) perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to *limit* jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be *maximum* rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction. UNIFORM CHILD CUSTODY JURISDICTION ACT § 3, 9 U.L.A. 124 (1969) (Commissioners' Note).

Under section 452.450.1(2)(a), the minimum requirement is that the child and at least one litigant have a *significant* connection with Missouri. *Timmings,* 628 S.W.2d at 727. It is clear that father meets this minimum requirement, as he has continuously resided in Missouri since his marriage to mother was dissolved. He continues to reside in the former marital dwelling. The key determination is whether this threshold requirement is satisfied with respect to Courtney.

Courtney was born in Missouri and lived here for nearly three years until she relocated to Maryland along with her mother. The remainder of her life has been spent in Maryland, except for visitation periods with her

---

**2.** "Home state" is defined as the state in which, immediately preceding the filing of a custody proceeding, the child lived with certain persons, including his or her parents or parent, for at least six consecutive months. § 452.445(4), RSMo 1994.

father. Though father claims some medical information is in Missouri (as a result of the summer visitation periods) along with some evidence concerning "present or future care, protection, training, and personal relationships," related to continued involvement in a local church when Courtney is with her father and the presence of father's extended family in Missouri, it cannot be disputed that optimum access to evidence relevant to a determination of Courtney's best interests would be in Maryland. It is in Maryland where Courtney attends school, has established friendships with her peers, is involved in activities, and where additional medical records are located.

■ In their arguments and briefs on appeal, it is clear that both parents have lost sight of the standard we are operating under, with father arguing how a denial of jurisdiction would be inconvenient and a burden on him and mother arguing how an acceptance of jurisdiction would burden and inconvenience her. The key to the resolution of the jurisdiction issue is their child, Courtney. Jurisdiction will lie in Missouri if it is in the best interests of Courtney, regardless of the burden or inconvenience it may cause to the parents. Though Missouri does retain some significant contacts with Courtney and her father, and could arguably entertain jurisdiction of a modification proceeding, we believe the trial court did not err in determining Courtney's best interests would be served by the courts of Maryland assuming jurisdiction of further custody proceedings.

■ Father contends the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C. § 1738A, mandates that continuing jurisdiction to modify the initial decree of dissolution rests solely with Missouri, and that were another state to assume jurisdiction and modify the decree, the other state's order of modification would not be enforceable in Missouri under the PKPA. This argument misapplies the law. The PKPA governs the enforcement and modification of foreign decrees and the treatment of concurrent proceedings. *Glanzner v. State, Dep't of Social Servs., Div. of Child Support Enforcement*, 835 S.W.2d 386, 389 (Mo.App.1992). The case at bar does not involve the enforcement or modification of a foreign decree—the underlying decree was issued by the Missouri courts. Further, there are no concurrent proceedings in separate jurisdictions presented by the case at bar, as mother has not initiated proceedings in Maryland. The facts of this case simply do not implicate the PKPA in the case's current posture. Finally, enforcement in Missouri of a modification by the Maryland courts after the Missouri courts declined jurisdiction would be mandated by the PKPA.[3]

Given the standards of the UCCJA as adopted by Missouri, the trial court did not err in declining jurisdiction to hear father's Motion to Modify—Change of Custody, as, in the best interest of Courtney under the facts of this case,[4] we believe Maryland should

---

**3.** Subsection (f) of 28 U.S.C. 1738A provides:
   A court of a State may modify a determination of the custody of the same child made by the court of another State if—
   (1) it has jurisdiction to make such a child custody determination; and
   (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
There is clearly a basis for jurisdiction in Maryland as it is the home state of the child under the UCCJA as adopted in Maryland. MD. FAM. LAW CODE ANN. § 9–201(f) (1974, 1991 Repl.Vol.); *Malik v. Malik*, 99 Md.App. 521, 638 A.2d 1184, 1186–88 (Md.App.1994). Additionally, section (2) is satisfied by this court's ruling affirming the trial court's declining of jurisdiction.
   If a Maryland court makes a modification, subsection (a) is implicated, which reads:
   The appropriate authorities of every State shall enforce according to its terms, and shall not

modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
The modification by the Maryland courts would be consistent with the provisions of the PKPA if the Maryland courts have jurisdiction to address the matter under its laws and it is the home state of the child. 28 U.S.C.A. 1738A (c)(1),(2) (West 1994). Though our analysis is not binding on the courts of Maryland as to whether it has jurisdiction over the case under the state's laws, we believe a modification by the courts of Maryland would be consistent with the provisions of the PKPA.

**4.** Robert cites several cases in his argument in support of his position that Missouri retains jurisdiction. We believe these cases are distinguishable on their facts from the case at bar.

assume jurisdiction to hear such a motion. Point denied.

## III. *INCONVENIENT FORUM*

█ In addition to dismissing the case for lack of jurisdiction, the trial court found that Missouri was an inconvenient forum to make a custody determination pursuant to section 452.470. Section 452.470.1 states:

> A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

Even a court that has jurisdiction under the UCCJA may decline to assert jurisdiction if it finds that it is an inconvenient forum and that circumstances dictate that another forum would be more appropriate. *Stewart*, 905 S.W.2d at 118.

Father alleges that there was insufficient evidence for the trial court to make a finding that Missouri was an inconvenient forum and comply with the UCCJA.[5] Father claims that because no testimony was offered and no affidavit filed by the mother to show facts which support her contentions as to significant contacts between Courtney and the state of Maryland, there was no evidentiary basis for the court's ruling. We disagree.

In *Lydic*, the mother removed the three children of the marriage from Missouri without the father's consent or court authorization. 789 S.W.2d at 130. Additionally, the three children involved lived a larger portion of their life in Missouri than did Courtney, as records of prior schooling, personal relationships, and care existed within the state. *Id.* at 132. The were more substantial connections between the children in Lydic and the state of Missouri than in the current case.

In *Dobbs*, the mother abandoned the children she was in custody of on at least two different occasions without money and clothes. 838 S.W.2d at 503. Additionally, at the time of dissolution, the children were ten and seven years of age, had attended school in Missouri, and had developed significant personal relationships while they lived in the state. *Id.* at 504. Again, there were more substantial connections between the children in Dobbs and the state of Missouri than in the current case.

█ Father's own pleadings associated with his motions clearly acknowledge that Courtney has resided in Maryland with her mother since the entry of the decree of dissolution when she was barely three years of age. Since this time, the only time Courtney has spent in Missouri has been during the periods of temporary custody assigned to the father in the decree of dissolution. Father's own allegation claiming the failure of mother to provide him with information concerning Courtney's school progress and extra-curricular activities allows the inference that school records and substantial evidence of personal relationships with peers are located in Maryland. There was sufficient evidence for the court to conclude that Courtney had significant contacts with the state of Maryland and that Missouri was an inconvenient forum to heard a custody modification proceeding. The trial court did not err under the standards of *Murphy v. Carron, supra.*

## IV. *CONTEMPT PROCEEDINGS*

█ Though we have determined that the trial court did not err in declining jurisdiction to modify the decree of dissolution as it pertained to child custody, that does not necessarily mean that the court was without jurisdiction to hear the contempt proceedings as well. An order for contempt is not a custody determination under the UCCJA. *Levis*, 771 S.W.2d at 931. Even if a court loses jurisdiction to modify a prior custody order under the UCCJA, it retains power to

We find that *Newton v. Newton*, 811 S.W.2d 868, 869 (Mo.App.1991), does not aid us in ruling on this case, as it merely stands for the proposition we recognized in the body of this opinion: a Missouri court continues to have jurisdiction to hear subsequent custody and visitation matters so long as one parent continues to reside in the state. However, more than one state may have jurisdiction over a custody case. *Id.* Missouri and Maryland could both have jurisdiction over the case at bar, yet we agree with the trial court that it is in the best interest of the child that Maryland assert jurisdiction for further custody modification proceedings.

5. Father cites *Piedimonte v. Nissen*, 817 S.W.2d 260, 266 (Mo.App.1991), for the proposition that a ruling of jurisdiction, or lack thereof, that is merely conclusory, but tacit of any factual basis for that adjudication does not meet the objectives of the UCCJA.

enforce compliance with an existing order through civil contempt. *Id.* The *Levis* court discussed the differences between the two actions, stating:

> There is a great difference between *modi-fication* jurisdiction and *enforcement* jurisdiction. Modification jurisdiction involves holding an evidentiary hearing to determine a change in circumstances and best interests of the child, whereas enforcement jurisdiction is limited to determining whether a custody order was valid when entered and can be enforced. (citation omitted)

771 S.W.2d at 931. Additionally, whether to exercise jurisdiction on a motion for contempt is within the trial court's discretion. *Id.* In *Levis,* court assumed jurisdiction for contempt. However, the record in *Levis* does not reflect that the court was asked to change custody pursuant to the contempt proceeding, as in the case at bar, or that custody was otherwise in issue.

■ In the case at bar, the trial court correctly noted that the allegations in father's motion for contempt are very similar to those in his motion to modify. Furthermore, in addition to the similarity of the pleadings, paragraph (b) in the prayer for relief in father's motion for contempt, requests as follows:

> b. For an order transferring custody of the parties' minor child to the Petitioner by virtue of the Respondent's failure to provide Petitioner with temporary custody in accordance with the terms of the Decree of Dissolution (RSMo Sec. 452.340.6);[6]

While father's request for transfer of custody was perfectly within the realm of relief allowed by Missouri law, it together with the similarity of the pleading in the contempt and modification motions provides a basis for the trial court declining jurisdiction in father's motion for contempt. We do not be-

lieve that it was an abuse of discretion of the trial court to decline jurisdiction in father's motion for contempt under the circumstances presented here.

The judgment of the trial court dismissing father's motions for lack of jurisdiction is affirmed.

All concur.

---

6. Section 432.340.6 provides:

> A court may abate, in whole or in part, any future obligation or support *or may transfer custody of one or more children* if it finds:
>
> (1) That a custodial parent has, without good cause, failed to provide visitation or temporary custody to the noncustodial parent pursuant to the terms of a decree of dissolution, legal separation or modifications thereof; and
>
> (2) That the noncustodial parent is current in payment of all support obligations pursuant to the terms of a decree of dissolution, legal separation or modifications thereof. The court may also award reasonable attorney fees to the prevailing party.