**STATE of Missouri ex rel. Richard PHELAN, Relator,**

v.

**Honorable Elizabeth DAVIS, Respondent.**

**No. WD 54671.**

Missouri Court of Appeals, Western District.

March 24, 1998.

W. Ann Hansbrough, Kansas City, for Relator.

Jeffrey Bay, Kansas City, for Respondent.

HANNA, Presiding Judge.

Richard Phelan, relator, and Christine Phelan are parties to a dissolution of marriage proceeding filed by Ms. Phelan in the circuit court of Clay County on March 14, 1997.[1] She also filed a motion for temporary child support, attorney fees and suit money *pendente lite.* Relator appeared specially to contest jurisdiction pursuant to Rule 55.27,[2] and filed a motion to dismiss for lack of personal and subject matter jurisdiction. On June 26, 1997, a hearing was held on the pending motions. On July 8, 1997, the respondent entered an order asserting both personal and subject matter jurisdiction over the relator, without explanation as to her basis. The July 8th order directed relator to pay Ms. Phelan child support commencing August 1st. Relator filed his petition for writ of prohibition with this court. We issued a preliminary order in prohibition, which is now made permanent.

Relator was a lifelong resident of Arkansas before meeting Ms. Phelan. The parties resided together in Missouri during 1991 and 1992. They moved to Arkansas and, on December 26, 1992, were married in Little Rock. The marriage was registered in Pulaski County, Arkansas. A child was born of the marriage on August 7, 1996. The parties continued to live in Little Rock from 1992 and until Ms. Phelan and her daughter moved to Missouri on November 28, 1996. Thereafter, relator came to Missouri on several weekends to visit his daughter. As a result of these visits, and the fact that relator and Ms. Phelan engaged in sexual relations on those occasions, Ms. Phelan contends they lived in lawful marriage in Missouri.

The relator was served in Arkansas under Missouri's long arm statute, § 506.500. The wife contends that there was personal jurisdiction. She also maintains that there was significant minimum contacts between relator and Missouri to justify personal jurisdiction. Ms. Phelan argues that they engaged in sexual relations on more than one occasion which satisfied the requirement of Rule 54.06(b) that they "lived in lawful marriage within this state," which gives the court per-

1. After Ms. Phelan filed her petition, relator filed for divorce in Arkansas. The Arkansas case is stayed pending a resolution of the jurisdictional issues presented to this court.

2. All references to Missouri statutes are from Missouri Revised Statutes, 1994, and all references to Missouri Supreme Court Rules are from Vernon's Annotated Missouri Rules.

sonal jurisdiction over relator.[3] The issue presented by the parties is whether the several occasions that they stayed together in Missouri constitutes "living in lawful marriage within this state." [4]

It is well established that a court must have jurisdiction over the person of the defendant in a dissolution of marriage proceeding to impose an *in personam* judgment, and lack of personal jurisdiction precludes consideration of orders pertaining to child support. *Thompson v. Thompson*, 657 S.W.2d 629, 631 (Mo. banc 1983). The burden is cast upon Ms. Phelan to prove, first, that the defendant had sufficient minimum contacts with Missouri to satisfy due process requirements and, second, that the suit arose out of an activity enumerated in the long arm statute. *See* § 506.500; Rule 54.06(b); *Mead v. Conn*, 845 S.W.2d 109, 111 (Mo.App.1993). The relevant portion of the long arm statute is that:

> [a]ny person, whether or not a citizen or resident of this state, who has lived in lawful marriage within this state, submits himself to the jurisdiction of the courts of this state as to all civil actions for dissolution of marriage ... and all obligations arising for maintenance of a spouse, support of any child of the marriage, attorney's fees, suit money, or disposition of marital property, if the other party to the lawful marriage lives in this state....

Section 506.500. *See also* Rule 54.06(b).

The minimum contacts requirement to "ensure traditional notions of fair play and substantial justice" dates to *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), when the Supreme Court held that:

> [d]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the

territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). Section 506.500.2 mandates compliance with the minimum contacts test by requiring that one whom the state would subject to an *in personam* judgment for child support must have "lived in lawful marriage within this state." *Thompson v. Thompson*, 657 S.W.2d at 631 (citing Rule 54.06(b)).

The Missouri Supreme Court in *Thompson* construed the meaning of Rule 54.06(b). 657 S.W.2d at 630. The parties were secretly married in Georgia and while the husband was attending college, the wife returned to Springfield where she lived with her parents. When the parties' parents learned of their Georgia marriage, a religious ceremony was held in Springfield to bless their marriage. The next day the couple returned to Georgia where they lived while the husband completed school. *See id.* Later they moved to Louisville, Kentucky, and maintained a home there until their divorce. During their marriage, they returned on several occasions to visit their families here, but never established a home in Missouri. After filing for divorce, the wife returned to Missouri and lived with her parents and the husband moved to Texas. The divorce was granted in Kentucky and provisions for custody and child support were made by the Kentucky court. *See id.*

Subsequently, Ms. Thompson filed an action in Missouri seeking modification of the Kentucky divorce decree and requested delinquent child support, increased child support, and modification of visitation privileges. She relied on Rule 54.06(b) to acquire per-

---

**3.** Relator and Ms. Phelan co-habitated in Missouri prior to their marriage. Ms. Phelan does not argue that the prior period of co-habitation in Missouri falls within the ambit of Missouri's long arm statute. See Section 451.040.

**4.** The husband claims they engaged in sex on only one occasion. The wife says that it occurred on seven different visits. We need not resolve this factual dispute for the purposes of our decision.

sonal jurisdiction claiming that she and her former husband had lived in Missouri "in lawful marriage." *See id.* Mr. Thompson challenged the Missouri court's *in personam* jurisdiction.

The *Thompson* court noted that Missouri courts have repeatedly rejected attempts to render *in personam* judgments against nonresidents when the requirements of Rule 54.06 have not been met. *See id.* at 630–31. The court noted that "the parties were together in Missouri on several occasions during the husband's school vacation, but only spent one night under the same roof after their marriage had been blessed and immediately returned to Georgia as had been their original intention." *Id.* at 631–32. The court held that these facts did not establish that the couple had "lived in lawful marriage in Missouri." *Id.* at 632. Thus, the requirement of Rule 54.06(b) had not been met. The Supreme Court cited to *Ferrari v. Ferrari* as authority that neither party had "lived in lawful marriage within this state." 585 S.W.2d 546, 547 (Mo.App.1979).[5]

The court noted in *Thompson* that the dispositive facts of *Crouch v. Crouch*, which also construed the meaning of what constituted "lived in lawful marriage within this state," were markedly similar. 641 S.W.2d 86 (Mo. banc 1982). Mr. Crouch was a nonresident who visited Missouri on a number of occasions. The wife was attending college in Springfield and the husband spent four days with her in Springfield. The *Crouch* court noted that the defendant never took up residence in Missouri and his stay in Springfield with his wife fell short of satisfying the jurisdictional prerequisite. *Id.* at 89. The court held that the defendant never "lived in lawful marriage within this state" and thus lacks

the minimum contacts with Missouri necessary to sustain the trial court's assertion of personal jurisdiction. *Id.* at 90.

Also, in *Laney v. Nigro*, the court considered whether there were sufficient contacts for personal jurisdiction over a defendant. 905 S.W.2d 902, 904 (Mo.App.1995). The court found that the only contact that the nonresident defendant had in Missouri was that he came to Missouri over a weekend when the parties' son graduated from high school. *See id.* at 905. The court held that these facts were not sufficient to allow *in personam* jurisdiction. *See id.*

■ In the case before us, the husband, who at all times has been a resident of Arkansas, was served with process in the state of Arkansas. He is employed in Arkansas and has not sought employment in Missouri, nor is there any evidence that he had the intent to change his domicile to the state of Missouri. There has been no evidence presented that the parties held themselves out as husband and wife, attempted to establish a home in Missouri, or intended to reestablish their marriage relationship. The wife's allegation that she and her nonresident husband engaged in sexual relations on more than one occasion in this state is, standing alone, insufficient to meet the standard of Rule 54.06(b) that they lived in lawful marriage within this state.

Relator's third point challenges the court's subject matter jurisdiction. Ms. Phelan maintains that there are two basis for subject matter jurisdiction. The first is premised on Missouri being the "home state." Section 452.445(4). Again, the trial court made no findings of fact or conclusions of law with respect to subject matter jurisdiction.

---

5. The Ferraris were married in New York and last co-habitated in Illinois where they separated. 585 S.W.2d 546, 547 (Mo.App.1979). The wife and the two minor children moved to New York and established residency. See id. The husband established his residency in Missouri and filed for divorce under the auspice of Rule 54 to obtain personal service upon the wife in New York. Although the wife admitted that the marriage was irretrievably broken and that the court had jurisdiction over the status of the marriage,

the court held that the Missouri court did not obtain personal jurisdiction over the wife and, therefore, the trial court lacked jurisdiction to enter orders pertaining to maintenance, child support and custody. See id. at 547–48. The husband had established residency in Missouri only after the separation. Id. at 548. Therefore, the court held that the trial court lacked jurisdiction to enter orders pertaining to maintenance, child support and custody. See id.

Section 452.445(4) defines the "home state" as "that state in which immediately preceding the filing of a custody proceeding, the child lived with ... a parent ... for at least six months; or in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned."

The Phelans' child was born in Little Rock, Arkansas, on August 7, 1996, and lived there until Ms. Phelan moved to Missouri with the child on November 28. Ms. Phelan filed her petition for dissolution of marriage on March 14, 1997.

■ The trial court's authority to hear a custody determination is characterized as jurisdiction of the subject matter. *See Elbert v. Elbert,* 833 S.W.2d 884, 887 (Mo.App.1992). The circumstances upon which the trial court bases its subject matter jurisdiction must exist at the time the jurisdiction of the court is invoked. *See State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 278 (Mo.App.1989).

■ In *Elbert,* the court found that § 452.445(4) defined "home state" as providing that the child must have resided in Missouri for six consecutive months immediately preceding the filing of the custody proceeding. 833 S.W.2d at 887. Missouri would not be considered the "home state" of the Phelans' child as she had not been in Missouri for six months preceding the filing of the petition and as their child was less than six months old at the time the petition was filed. The parties' daughter was a resident of Missouri for approximately four months at the time the petition was filed. Therefore, § 452.445(4) is not a basis for jurisdiction.

■ In Ms. Phelan's final point, she contends that subject matter jurisdiction may be acquired by § 452.450.1(2)(a); Missouri's enactment of the Uniform Child Custody Jurisdiction Act (UCCJA). Section 452.450.1(2)(a)(b) bestows subject matter jurisdiction if "the child and at least one litigant, have a significant connection with this state; and there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships." Jurisdiction exists under § 452.450.1(2) if its in the child's best interest, not the interests or convenience to the parties, to determine custody in a particular state. *See Payne v. Weker,* 917 S.W.2d 201, 204 (Mo.App.1996)(quoting *Timmings v. Timmings,* 628 S.W.2d 724, 726–27 (Mo.App.1982))(other citations omitted). If evidence is presented that the jurisdictional requirements of § 452.450 were met, then the trial court's judgment cannot be declared erroneous. *See Miller v. Robinson,* 844 S.W.2d 574, 579 (Mo.App.1992).

■ Ms. Phelan argues that their daughter's day-care, medical records and familial connections in Missouri support her assertion of significant connections. However, none of this "evidence" was before the trial court. The record before this court is devoid of any evidence that the child has significant connections with Missouri, except that she lived in Missouri with her mother for approximately four months before the filing of this action. Therefore, there is no evidentiary basis for the trial court concluding that the best interests of the child would be best served by an assumption of jurisdiction and § 452.450.1(2)(a) cannot serve as a basis for subject matter jurisdiction.

The writ is made permanent.

LOWENSTEIN and ELLIS, JJ., concur.