In re the MARRIAGE OF Brenda
E. WADE and Everett Lee
Wade, Jr.

Brenda E. Griffin, formerly Brenda
E. Wade, Respondent,

v.

Everett Lee Wade, Jr., Appellant.

No. 21996.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 5, 1999.

---

Christena E. Silvey, Garrett & Silvey, West Plains, for appellant.

Todd F. Thorn, West Plains, for respondent.

CROW, Judge.

On September 25, 1998, a three-judge panel of this court, by a two-to-one vote, issued an opinion in this case. The dissenting judge filed an opinion certifying the case for transfer to the Supreme Court of Missouri pursuant to Rule 83.01, Missouri Rules of Civil Procedure (1998). On December 22, 1998, the Supreme Court of Missouri issued the following order: "Cause ordered retransferred to the Missouri Court of Appeals, Southern District."

The original opinion of this court, which follows, is now readopted and reissued, accompanied by the original dissenting opinion.

* * *

The marriage of Everett Lee Wade, Jr. ("Father") and Brenda E. Wade ("Mother") was dissolved by a decree entered April 20, 1987, in the Circuit Court of Howell County, Missouri ("the trial court"). The decree awarded Mother "care and custody" of the parties' two children (Michael and Amanda), and granted Father "reasonable visitation privileges."

On June 23, 1997, Father filed a motion to modify the custody and visitation provisions in the dissolution decree.

Mother, citing Missouri's version of the Uniform Child Custody Jurisdiction Act ("UCCJA"), §§ 452.440–.550, RSMo 1994, as amended, and averring Missouri was no longer the children's home state, moved the trial court to dismiss Father's motion to modify.

The trial court, following an evidentiary hearing on Mother's motion to dismiss, entered judgment dismissing Father's motion to modify.

Father appeals. His claims of error require an account of the evidence pertinent to the trial court's ruling.

Father remained a Missouri resident after the dissolution. On a date unrevealed by the record, he married his present wife, identified in the transcript as "Vickie."

Sometime after the dissolution, on a date unrevealed by the record, Mother married her present husband, identified in the transcript as "Joe."[1] In 1990, Mother and Joe moved from Missouri to Florida, taking Michael and Amanda with them. The quartet resided in Florida "almost a year," then returned to Missouri.

In November 1992, Joe moved to Colorado "because of employment." Mother, accompanied by Michael and Amanda, joined Joe in Colorado on April 2, 1993. The quartet was still residing in Colorado on the date the trial court heard evidence on Mother's motion to dismiss (October 1, 1997). At the time of that hearing, Michael, a high school freshman, was almost 15; Amanda an eighth-grader, was 13.

On a date unrevealed by the record (but before the move to Colorado), Amanda "was diagnosed with cancer." After the move to Colorado, Mother made 17 trips with Amanda from Colorado to Memphis, Tennessee, so Amanda could receive treatment at St. Jude's Children's Research Hospital. Fourteen of those trips were by automobile through West Plains, Missouri, where Father resides. On those trips, Michael accompanied Mother and Amanda. Mother stayed overnight in West Plains with her mother; Michael and Amanda stayed overnight with Father. Consequently, Father was able to see Michael and Amanda on their way to Memphis and again on their return to Colorado.

Mother recalled there were times "that we stayed longer than two days." Additionally, there were times when Michael, instead of accompanying Mother and Amanda from West Plains to Memphis, remained with Father until Mother and Amanda returned through West Plains to Colorado. On those occasions, Michael's time with Father "exceeded a week."

The frequency of Amanda's treatments in Memphis in 1993 is unrevealed by the record. In 1994, her treatments were "three months apart"; in 1995, the interval between treatments lengthened to four months. The record does not disclose when Amanda received the final treatment; however, at the hearing on Mother's motion to dismiss, Mother testified Amanda was no longer receiving treatments, just "checkups" at the oncology department of a children's hospital in Denver that "works with St. Jude's." Amanda also has a "heart condition" and is under the care of a physician at the Denver hospital for that ailment.

Except for a trip to Memphis, neither Michael nor Amanda spent time with Father in the summer of 1993. Mother recalled both children spent "an extended period of time" with Father in the summer of 1994 and again in the summer of 1995.

In the summer of 1996, according to Mother, Amanda spent time with Father, but Mi-

---

1. We infer Joe's surname is Griffin, as Mother identified herself as Brenda Elaine Griffin when she testified at the hearing on her motion to dismiss.

chael was working in Colorado and "chose not to come" to Missouri.

Asked about the summer of 1997, Mother recounted that Father and Vickie drove to Colorado and picked up Michael and Amanda on May 21. About June 16 or 17, Mother, accompanied by Michael's "girlfriend," went to Missouri because Mother's mother "was having surgery." Mother planned to take Michael, Amanda, and the girlfriend back to Colorado after the surgery. Mother explained: "I was under the understanding that [the girlfriend] could stay with [Father] and Vickie while my mother was going through surgery."

Four days after Mother's arrival in West Plains, Father asked Mother "to come and get the kids during the day while [Father and Vickie] both worked." According to Father: "[W]hile we was gone during the day, activities happened that we thought ... should be controlled." The nature of the activities is unrevealed by the record; however, Mother testified the activities "resulted in a police report being filed," and "the juvenile authorities in Howell County were involved" at her request.

Because of the events described in the preceding paragraph, Mother returned to Colorado, taking Michael (and presumably the girlfriend) with her. Mother avowed Father "refused to give [me] Amanda [at] that time."

As reported in the second paragraph of this opinion, Father filed his motion to modify June 23, 1997. It averred, *inter alia*, that Amanda was then in Father's "temporary custody" in Howell County and that she had "expressed a desire to reside with [Father]."[2]

On a date unrevealed by the record, Mother returned to Missouri, picked up Amanda,

and went back to Colorado. According to Father, this occurred "while we was gone to work."

In its judgment dismissing Father's motion to modify,[3] the trial court found Colorado is the children's home state. The trial court further found that although the children visit Father in Missouri, the children "have no other significant contacts with this state." Additionally, the trial court found it is in the best interest of the children for Colorado to assert jurisdiction for custody modification proceedings, as school records, medical records, and evidence of extracurricular activities and personal relationships with peers are located in that state.[4] The trial court's judgment concluded: "Missouri is an inconvenient forum for a custody modification proceeding."

In his brief, Father concedes Colorado is the children's home state. Nonetheless, he maintains the trial court erred in dismissing his motion to modify.

The first two of Father's three points relied on are based on the following UCCJA segment:

"452.450. Jurisdiction.—1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by ... modification decree if:

(1) ...

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's

---

2. Father's motion prayed the trial court to: (a) grant Father and Mother joint legal and physical custody of both children, (b) award Father primary physical custody of Amanda, subject to Mother's "rights of specific visitation," and (c) award Mother primary physical custody of Michael, subject to Father's "rights of specific visitation."

3. Simultaneously with his motion to modify, Father filed a motion for temporary custody of

Amanda pendente lite. The trial court's judgment declared: "[T]his case is dismissed for lack of jurisdiction." We treat that ruling as a dismissal of both of Father's motions.

4. Mother testified Michael "participates in FFA," and is on the varsity football and basketball teams. He has a "regular family doctor" in Colorado. Amanda is a "junior high cheerleader" and plays volleyball and basketball.

present or future care, protection, training, and personal relationships; or

....."

Father's first point avers the trial court erred in finding that except for visiting Father, the children have no significant contacts with Missouri. Father maintains that finding is against the weight of the evidence in that all of the children's family reside in Missouri and "none of their family [resides] in Colorado." Father emphasizes that the children's family members in Missouri include (a) their maternal grandmother, (b) Mother's brothers and sisters, (c) Father's mother, and (d) Father's sister. Additionally, Mother testified: "There was a man and lady in Manes that raised [Father] that Amanda and Michael think the world of." The lady is deceased, but the man is still alive.

Father also underscores the evidence (recounted earlier) that the children spent time with him during the Memphis trips and during the summers after moving to Colorado.

We glean from the argument following Father's first point that he believes the evidence satisfied § 452.450.1(2)(a), quoted *supra*, and the trial court erred in ruling otherwise.

As shall become evident later in this opinion, it is unnecessary to assess the merit, if any, in Father's first point.

Father's second point proclaims the trial court erred in finding it was in the children's best interest for Colorado to assert jurisdiction of a custody modification proceeding. Father asserts: (1) the "majority of Amanda's medical records" are in Tennessee, not Colorado, (2) all of the children's family reside in Missouri, (3) the children had extensive visitation with Father in Missouri after moving to Colorado, (4) the children formed friendships and had employment in Missouri, and (5) Father filed his motion to modify as a result of the incident in June 1997, which resulted in the involvement of law enforcement and juvenile authorities "and all witnesses and evidence" were available in Missouri. In support of contention 4, Father refers us to his testimony that Michael and Amanda had a few friends in Missouri,

Amanda did part-time baby-sitting in Missouri, and both children spent time visiting family and friends in Missouri.

We glean from the argument following Father's second point that he believes the evidence satisfied § 452.450.1(2)(b), quoted *supra*, and the trial court erred in ruling otherwise.

Later in this opinion it will become obvious that, like Father's first point, the merit, if any, in his second point need not be determined.

■ Father's third point maintains the trial court erred in finding that Missouri is an inconvenient forum for a modification proceeding involving Michael and Amanda. That contention compels us to decide whether the trial court committed reversible error in applying the following UCCJA provision:

"452.470. Inconvenient forum.—1. A court which has jurisdiction under this act to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum."

A perceptive reader will readily realize that if the trial court in the instant case committed no reversible error in applying § 452.470.1 (the issue in Father's third point), it is unnecessary for us to decide whether the trial court erred in its implicit holding that it lacked jurisdiction under § 452.450.1(2) to make a custody determination regarding Michael and Amanda (the issue in Father's first and second points). Consequently, Father's third point is the first one we shall address. Our first task in addressing it is to ascertain the standard of review.

■ We commence that task by comparing § 452.470.1 (quoted *supra* ) with the doctrine of *forum non conveniens* as set forth in *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298 (Mo. banc 1992), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992):

"The doctrine of *forum non conveniens* provides that notwithstanding proper jurisdiction and venue by the letter of the statute, a trial judge has discretion to not exercise jurisdiction if the forum is seriously inconvenient for the trial of the action involved and if a more appropriate forum is available to the plaintiff."

832 S.W.2d at 302.

■ It is immediately obvious that § 452.470.1 and the doctrine of *forum non conveniens* are virtually identical.[5] Consequently, we conclude the standard of appellate review of a trial court's dismissal of a lawsuit on the ground of *forum non conveniens* is the standard an appellate court should apply in reviewing a trial court's dismissal of a custody modification proceeding on the basis of § 452.470.1.

■ In *Taylor v. Farmers Insurance Co., Inc.*, 954 S.W.2d 496 (Mo.App. S.D.1997), the trial court dismissed a lawsuit on the basis of *forum non conveniens. Id.* at 499. On appeal, this court held:

"We review a trial court's decision to dismiss an action based on *forum non conveniens* under an abuse of discretion standard."

*Id.* at 499[3].

■ The abuse of discretion standard is explained in *Anglim* :

"On appeal, in determining whether the trial court's ruling amounted to an abuse of discretion, . . . the evidence will be viewed in a light favorable to the result of the trial court. Also on appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing an abuse of discretion. Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion."

832 S.W.2d at 303[8] (citation omitted).

We shall apply the above standard in adjudicating Father's third point.[6]

Father argues that the evidence catalogued by him in support of his first two points (itemized earlier in this opinion) demonstrates the trial court erred in finding Missouri an inconvenient forum for a custody modification proceeding regarding Michael and Amanda.

Mother responds by pointing out that Michael and Amanda had lived in Colorado for more than four years when Father filed his motion to modify, that the children's school records for those years are in Colorado, that witnesses familiar with the children's extracurricular activities and personal relationships with peers are in Colorado, and that medical records of the physicians providing health care to the children in Colorado are on file there.

The evidence identified in the preceding paragraph is analogous to the evidence in *Payne v. Weker*, 917 S.W.2d 201 (Mo.App. W.D.1996). There, a Missouri court dis-

---

5. Section 452.470.1 is identical to § 7(a) of the UCCJA, 9 U.L.A., Master Edition, Pt. I, p. 233 (1988). A comment following that section reads: "The section is a particular application of the inconvenient forum principle, recognized in most states by judicial law, adapted to the special needs of child custody cases." *Id.* at 234. In *Brown v. Brown*, 195 Conn. 98, 486 A.2d 1116, 1123[6] (1985), the Supreme Court of Connecticut said: "Declining jurisdiction under [the inconvenient forum provision of the Connecticut version of the UCCJA] is discretionary with the court. By the inclusion of the word 'may' in that section, the legislature clearly intended that the inconvenient forum issue in UCCJA cases remain discretionary . . . as is the common law forum non conveniens principle."

6. In *Jones v. Jones*, 724 S.W.2d 615, 618 (Mo. App. S.D.1986), the appellant claimed the trial court erred in *exercising* jurisdiction in a custody modification proceeding when the court could have declined to do so under § 452.475.2 because the adverse party violated a provision of a custody decree of another state. This court explained: "This [provision] of § 452.475.2 as does § 452.470 . . . provides that under specified circumstances the court 'may decline to exercise its jurisdiction'. These statutes imply discretion in the trial court." *Id.* This court held the trial court "did not abuse its discretion in exercising jurisdiction." *Id.* That holding was unquestionably an application of the abuse of discretion standard of appellate review.

solved a marriage in 1991 and awarded primary physical custody of the parties' child to the mother. *Id.* at 202. In 1995, the father filed a motion to modify in the Missouri court, seeking primary physical custody of the child. *Id.* at 203. The trial court found Maryland had become the child's home state and Missouri was an inconvenient forum for the father's modification proceeding. *Id.*

On appeal by the father, the Western District of this court affirmed the trial court's finding that Missouri was an inconvenient forum. *Id.* at 206. The opinion noted the child was three when the marriage was dissolved and was thereafter in Missouri only during the father's periods of temporary custody. *Id.* The opinion observed that evidence concerning the child's school progress and extracurricular activities, together with evidence concerning her personal relationships with peers, was in Maryland. *Id.*

Attempting to demonstrate that *Payne* is inapplicable here, Father asserts Michael and Amanda lived in Missouri "the majority of their lives." While that is true, it is likewise true that the bulk of the evidence regarding the children's physical, social and academic progress during the four years immediately preceding the filing of Father's motion to modify is in Colorado, not Missouri.

Father also argues that the records of Amanda's cancer treatments in Memphis are not in Colorado. While that is patently true, it is equally true that such records are not in Missouri.

Finally, Father points out that the records and witnesses regarding the incident in June 1997 are in Missouri. However, that evidence concerns a lone incident. Obviously,

most of the evidence regarding the children's daily lives, habits, associates and behavior as they advance through adolescence is in Colorado.

We are also mindful that because of the children's ages, it is possible that one or both parties would present one or both children as witnesses in a modification proceeding. Even if not, it is likely the judge would interview each child in chambers to ascertain such child's wishes as to his or her custodian.[7] Inasmuch as the children reside in Colorado, it would be more convenient for them to attend court there than in Missouri, particularly during the school year.

Applying the abuse of discretion standard of appellate review as articulated in *Anglim,* 832 S.W.2d at 303[8], we hold that if § 452.450.1(2), quoted *supra,* conferred jurisdiction on the trial court to hear and determine Father's motion to modify (a subject as to which we need not, and do not, express any opinion), the trial court did not abuse its discretion in declining to exercise jurisdiction over Father's motion.[8] That holding renders Father's first two points moot, hence we leave them undecided.

Judgment affirmed.

PREWITT, P.J., concurs.

PARRISH, J., dissents and files dissenting opinion certifying case for transfer to Supreme Court of Missouri.

PARRISH, Judge, dissenting.

I respectfully dissent. In my opinion the trial court's dismissal of Mr. Wade's motion to modify based on a finding that Missouri is an inconvenient forum was an abuse of dis-

---

7. An in-chambers interview is permitted in Missouri by § 452.385. We glean from Martindale–Hubbell Law Digest, Colorado, CO–54, Custody of Children (1998), that an in-chambers interview is also permitted in Colorado.

8. In *Marriage of Stephens,* 954 S.W.2d 672, 678 n. 3 (Mo.App. S.D.1997), this court said:

"In Thomas A. Sheehan, *Standard of Review on Appeal,* Vol. 53, Journal of The Missouri Bar, No. 5, p. 281, the author points out that one of the essential tasks in evaluating the likelihood of success on appeal is to identify the standard of review for the issue being pre-

sented. The author explains: 'The most deferential standard of review, the abuse of discretion standard, severely limits the power of the appellate court to reverse or otherwise alter the rulings of the lower court.' "

We emphasize that because of that deferential standard, our opinion should not be understood as implying we would have convicted the trial court of error had it *exercised* jurisdiction to hear and determine Father's motion to modify (assuming, *arguendo,* that § 452.450.1(2) conferred jurisdiction on the trial court to do so).

cretion. I would reverse and remand for evidentiary hearing on the merits.

The majority opinion recites the explanation of the abuse of discretion standard that appears in *Anglim v. Missouri Pacific Railroad Co.*, 832 S.W.2d 298 (Mo. banc), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). That explanation includes, "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; . . . ." 832 S.W.2d at 303.

I believe the circumstances of this case are such that the trial court's ruling defies logic; that the ruling is so arbitrary and unreasonable that it is an affront to any sense of justice; that it demonstrates a complete lack of consideration of existing circumstances. In my opinion, under the circumstances that appear from the record before this court, the trial court's action denies Mr. Wade administration of prompt justice, a right guaranteed the citizens of this state by Art. I, § 14 of the Missouri Constitution.[1] *See Loftus v. Lee*, 308 S.W.2d 654, 660 (Mo.1958).

At the time the trial court dismissed the motion to modify, the children were ages 14 and 13. The son, Michael, was a high school freshman; the daughter, Amanda, an eighth-grader. There had never been a proceeding in the court of any other state directed to custody of the children or the visitation rights of their parents. The ages of the children are significant. They are in their formative years. How will an extensive delay in adjudicating their parents' custody rights affect them? By the time a new action is commenced in another state and tried, will either or both have attained the age of majority?

The purpose of the Uniform Child Custody Jurisdiction Act (the UCCJA) was discussed in *Lydic v. Manker*, 789 S.W.2d 129 (Mo. App.1990):

Writers addressing the purposes of the UCCJA have suggested that its drafters, in including the part of the act which Missouri has enacted as § 452.450.1(2) [RSMo 1986 [2]], intended for a state which enters an original custody decree to maintain jurisdiction of subsequent proceedings so long as that state continues to have significant contacts with a party or the child who is the subject of the proceeding. It has been suggested that:

> Where a custody decree is entered in Missouri, and the child and a parent move to another state, Missouri continues to have preferential jurisdiction to hear subsequent custody and visitation matters, so long as one parent continues to reside in Missouri.

Kruger [*Jurisdiction Under the Uniform Child Custody Jurisdiction Act*, 44 J.Mo. Bar 467, 469 (1988)]; In *Kumar v. Superior Court of Santa Clara Cty.*, 32 Cal.3d 689, 186 Cal.Rptr. 772, 776, 652 P.2d 1003, 1007 (Sup.1982), a California court stated this principle as follows:

> Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the Court record and other evidence exists and where one parent or another contestant continues to reside.

*Id.* at 131 [footnote omitted].

The children and their mother resided in Missouri at the time of the dissolution of marriage. They continued residing there after the dissolution for a period of time before moving to Florida. They returned to Missouri and again resided there before moving to Colorado to be with the mother's present husband. After moving to Colorado, the children visited father in Missouri on numerous

---

1. Mo. Const. art. I, § 14, provides:
   That the courts of justice shall be open to every person, . . . *and justice shall be administered without sale, denial or delay.* [Emphasis added.]

2. § 452.450.1(2), RSMo 1994, is unchanged from its 1986 revision.

occasions pursuant to his "reasonable visitation privileges."

Mr. Wade based his request for modification, to some extent, on an event that occurred in Missouri (details of which are not in the record). He sought joint legal and physical custody with the children's mother, primary custody of Amanda, and specific custodial periods with Michael.

Under these circumstances, in my opinion, the trial court's finding that the Missouri court was an inconvenient forum was an abuse of discretion. If the determination stands, the children will be subjected to an extended delay before their custodial circumstances are decided; Mr. Wade will be subjected to additional delay and, most likely, duplicative expenses in conjunction with orienting new counsel on the facts of the case and arranging for evidence available in Missouri to be available in Colorado. Such a result promotes a belief sometimes attributed to the public that legal proceedings take too long, cost too much and never end.

I fail to see how the trial court's dismissal of the motion to modify based on a finding that Missouri is not the convenient forum is anything but arbitrary, unreasonable and unjust. The application of the UCCJA *forum non conveniens* statute, § 452.470, RSMo 1994, under these facts is contrary to the purpose of the act as identified in *Lydic v. Manker, supra.* The trial court's ruling thwarts its responsibility to administer justice without delay.

I deem the majority opinion to be contrary to this court's ascertainment in *Lydic v. Manker, supra,* of the purpose of the UCCJA. The majority opinion is in conflict with and contrary to that decision in the respect stated. Pursuant to Rule 83.01, I certify the case for transfer to the Supreme Court of Missouri.